**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roland A. SOULARD,
Defendant-Appellant.**

**No. 82–1780.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 29, 1983.

Decided April 12, 1984.

---

James P. Springer, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Felix A. Maciszewski, Honolulu, Hawaii, for defendant-appellant.

Before ELY, WALLACE, and REINHARDT, Circuit Judges.

ELY, Circuit Judge:

Soulard appeals from his judgments of conviction under 26 U.S.C. § 7206(1) (1976) for willfully subscribing false corporate tax returns (Counts I, III, and V) and, also, individual tax returns (Counts II, IV, and VI) for the years 1975, 1976, and 1977.

This appeal is timely, and we have jurisdiction under 28 U.S.C. § 1291 (1976). We affirm.

## FACTUAL BACKGROUND

During the years in question, Soulard was the sole stockholder of RST, Inc., Mr. Softee Hawaii ("corporation"), which was the Hawaiian distributor of franchises for the principal corporation, Mr. Softee, Inc. ("parent corporation"), located in New Jersey. Soulard assigned sales territories to subfranchisees, sold Mr. Softee trucks to them, sold ice cream mix to them on occasion, and trained them. Under Soulard's contractual relationships with the parent corporation and with the subfranchisees, he shared in the royalties the parent corporation collected from the individual subfranchisees based on ice cream mix sales.

Soulard personally kept and maintained the corporation's and his individual financial records in his home. The income tax returns for the years 1975, 1976, and 1977 were prepared by trained tax preparers, based on the records kept and supplied by Soulard.

On March 19, 1982, a federal grand jury indicted Soulard for willfully and knowingly subscribing, signing, and filing false and fraudulent corporate and individual income tax returns for the three years hitherto specified. After a jury trial, Soulard was found guilty on all six counts as charged in the indictment. He was sentenced to 18 months' imprisonment, ordered to pay a $2,500 fine, and placed on five years' probation. Soulard has, until now, remained free on bond.

## ANALYSIS

In this appeal, Soulard urges numerous errors. We shall discuss the contentions in the order presented.

1. The bank deposits method of proof has been described by our Court as follows:

> The bank deposits method of proof is ... a circumstantial way of establishing unreported income. It purports to demonstrate that excess income must exist by showing excessive unaccounted for bank deposits. The bank deposits for the tax year are totaled, with adjustments made for funds in transit at the

## I. EVIDENTIARY RULINGS

### A. STANDARD OF REVIEW

 As to all of the District Court's evidentiary rulings at issue, the standard of review is abuse of discretion. *United States v. Rohrer*, 708 F.2d 429, 432 (9th Cir.1983) (evidentiary rulings in general); *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir.1983) (proper foundation, relevancy, balance of probative value and prejudicial impact); *United States v. Bradshaw*, 690 F.2d 704, 708 (9th Cir.1982) (evidence of other acts), *cert. denied*, —— U.S. ——, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983); *United States v. Fleishman*, 684 F.2d 1329, 1336 (9th Cir.) (expert testimony), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). To determine whether the District Court abused its discretion, this Court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

 Even if error is found, the nonconstitutional errors alleged here would not require reversal unless it was more "probable than not" that they affected the verdict. Fed.R.Crim.P. 52(a); *United States v. Rohrer*, 708 F.2d at 432. In other words, the usual "harmless error" rule applies.

### B. BANK DEPOSITS METHOD

Soulard alleges that the District Court committed reversible error by admitting evidence supporting the bank deposits method of proof [1] and by allowing the prosecution to use summary charts supporting the bank deposits analysis.

beginning and the end of the year. Non-income deposits are then excluded, and non-deposited income is included. This constitutes a reconstructed gross income. Calculation of taxable income then proceeds in the usual way, taking into account the legitimate deductions, exceptions, exclusions, and credits. In the case of a business, these would include the business's cost of goods sold and other ex-

### 1. Bank Records Exhibits

First, Soulard claims that the District Court erroneously admitted the bank deposits analysis because the bank records exhibits [2] upon which the analysis was based were improperly admitted. Soulard asserts that the exhibits should not have been admitted because the Government failed to establish that the exhibits were "complete sets" of the pertinent bank records. "If the records are incomplete," Soulard contends, "it is impossible to subtract out ... nontaxable items, and the bank deposit analysis based on such records is inaccurate."

Soulard correctly argues that neither the bank witnesses (who produced the bank records exhibits) nor the Government's summary witness (who explained the bank deposits analysis) stated that they knew that "all pertinent [bank] records were duplicated and marked as exhibits for use at trial." Indeed, both bank witnesses stated on cross-examination that they had not compared each one of the records to determine whether the records exhibits were complete. Moreover, the lack of completeness of the records exhibits appeared to be recognized at trial by the Government, and the District Court admitted the records "for whatever they're worth."

■ Mindful of the safeguards set forth in *United States v. Hall,* 650 F.2d 994 (9th Cir.1981),[3] regarding the bank deposits method of proof, we do not condone the admission of possibly incomplete bank records exhibits "for whatever they're worth." Indeed, allowing the admission of admittedly incomplete records may prove fatal in some cases. Nonetheless, in the circumstances of this case, we cannot conclude that the District Court, by admitting the bank records exhibits, so abused its discretion as to require reversal of the judgments.

The foundation for admitting the exhibits was adequate, notwithstanding our belief that it should have been somewhat stronger. There was testimony before the District Court from which it could conclude that the bank records exhibits were authentic and relevant. Both bank witnesses testified that they had compared most of the Government's exhibits with the original bank records to verify that the exhibits were authentic copies of "those [docu-

penses. If the resulting figure differs from what the taxpayer has reported, the Government will contend that the difference is unreported taxable income.

*United States v. Hall,* 650 F.2d 994, 996 n. 4 (9th Cir.1981).

2. With respect to the savings accounts, the bank records consisted of facsimile copies of signature cards, savings account ledgers, and any transactions appearing on the ledgers. With respect to the checking accounts, the bank records consisted of facsimile copies of signature cards, monthly statements, cancelled checks, deposited items, and any other transactions appearing on the monthly statement.

3. In *Hall,* the court concluded that "comprehensive explanatory instructions must be given when the bank deposits method of proof is used, just as is required by *Holland* for the net worth method." *Hall,* 650 F.2d at 999. In reaching this conclusion, the *Hall* court reasoned that when the bank deposits or net worth methods of proof are used, they trigger "special protections for the accused and particularly careful scrutiny by the courts." *Id.* at 997; *see id.* at 999. The *Hall* court cited with approval the following language of the Supreme Court:

While we cannot say that [the] pitfalls inherent in the net worth method foreclose its use, they do require the exercise of great care and restraint. The complexity of the problem is such that it cannot be met merely by the application of general rules. [Citation omitted.] Trial courts should approach these cases in the full realization that the taxpayer may be ensnared in a system which, though difficult for the prosecution to utilize, is equally hard for the defendant to refute.... Appellate courts should review the cases, bearing constantly in mind the difficulties that arise when circumstantial evidence as to guilt is the chief weapon of a method that is itself only an approximation.

*Id.* at 997 (citing *Holland v. United States,* 348 U.S. 121, 129, 75 S.Ct. 127, 132, 99 L.Ed. 150 (1954)).

Of particular concern to the *Hall* court was "the possibility that the trier of fact will not give the defendant the full benefit of doubt he deserves." *Id.* 650 F.2d at 997. Our discussion in the above text shows that, in the circumstances of the case at hand, the District Court took adequate steps to insure that Soulard was afforded the full benefit of the doubt he deserved.

ments] maintained by the bank in [their] ordinary course of business." And, there were no monthly statements or ledgers missing from the exhibits.

■ Soulard urges that we and our Court should announce a rule whereby a showing of "completeness," in addition to showings of authenticity and relevancy, must be made before admitting bank records exhibits in cases using the bank deposits method of proof. We decline to reach such a result. As we see it, once adequate foundational showings of authenticity and relevancy have been made, the issue of completeness then bears upon the Government's burden of proof and is an issue for the jury to resolve, assuming, of course, that the jury has been properly instructed. In the case at hand, the issue of completeness was argued vigorously to the jury and the District Court properly instructed the jury as to the underlying inferences and assumptions of the bank deposits method of proof and the Government's burden of proof thereunder. In these circumstances, neither the spirit nor the letter of *Hall* was violated.[4] The District Court did not so abuse its discretion as to warrant reversal.

### 2. *Beginning Cash on Hand*

■ Second, Soulard argues that the District Court erroneously admitted the bank deposits analysis because the Government failed to establish an accurate cash on hand figure for the beginning of the three-year prosecution period. The beginning cash on hand figure is important because a large amount of undeposited cash could explain Soulard's "excessive" deposits. Soulard argues the beginning cash on hand figure was based on evidence that was inadmissible and inferior to the testimony of a certain witness. Based on our review of the record, we hold that the District Court did not abuse its discretion by admitting the bank deposits analysis

based on the Government's beginning cash on hand figure.

The Government's first witness testified that in late 1974 Soulard had a metal box that contained "quite a bit" of money. On cross-examination, the witness testified that there may have been as much as $200,-000.00 in the box. Soulard claims that, in light of this testimony, the Government erroneously relied on an "uncorroborated" credit application to establish a beginning cash on hand figure.

Yet, the witness clearly did not know how much cash the metal box contained: "[W]hen that box was opened, I saw a lot of money. I can't tell you if it was ten thousand or twenty thousand or five thousand. I didn't count it ...."

■ Also, Soulard, before he filed any of the returns in question (and before he was investigated), submitted to his bank a signed financial statement that detailed in exact amounts all of his assets including cash on hand as of the beginning of the prosecution period. The Government used this statement to establish its beginning cash on hand figure. Soulard did not object to the admission into evidence of this statement. Even if he had, the signed financial statement constituted a pre-offense statement of Soulard, which was fully admissible without corroboration. *Warszower v. United States*, 312 U.S. 342, 347, 61 S.Ct. 603, 606, 85 L.Ed. 876 (1941).

Thus, because there was evidence supporting the Government's beginning cash on hand figure, the District Court did not abuse its discretion by admitting the bank deposits analysis based on that figure. That there was potentially conflicting evidence as to the figure does not, of course, necessarily mean that the admission of the bank deposits analysis was an abuse of discretion. The jury was properly instructed as to the bank deposits method of proof and the figures used therein. It was for the jury to determine whether the figure in

---

**4.** Moreover, even if error were to be assumed, Soulard has not shown prejudice. Soulard had ample opportunity, before and during trial, to examine the records to point out "missing" documents, yet he declined to make this examination and thus cannot now point to even arguable omissions of non-taxable items.

the Government's bank deposits analysis properly represented Soulard's cash on hand at the beginning of the prosecution period. Having found Soulard guilty on all counts, the jury apparently gave greater weight to the Government's figure than to the testimony of the witness.

### 3. *Presentation of the Bank Deposits Analysis*

■ Third, Soulard claims the bank deposits analysis should not have been admitted because it was presented in an improper manner. Soulard argues the District Court erroneously admitted the summarizing testimony of a previously uninvolved Internal Revenue Service ("IRS") agent, which "was based, to a considerable extent, on the analysis and conclusions of others." Soulard further argues that "at no time during the trial did the government present to the court and jury a first hand, step-by-step explanation of how it analyzed [his] bank account records," but instead, improperly used its summary charts to present its bank deposits analysis. These arguments being, for the most part, without merit, the District Court did not abuse its discretion by admitting the presentation of the bank deposits analysis.

### a. *Summarizing Witness*

The IRS agent who testified as a summarizing witness to present the Government's bank deposits analysis was not involved in the investigation or original preparation of the Government's case. The District Court expressed surprise that the initial computations were not performed by the expert witness, but nevertheless denied a motion to strike the witness' testimony. The District Court based its decision on the following conclusions: (1) that the testimony indicated that the witness had had sufficient experience as an auditor to judge another person's work and "to incorporate as his own, the fact of its expertise"; and (2) that Soulard's arguments on the motion went to the weight of the evidence, not to its admissibility. Our review of the record

convinces us that those conclusions were correct.

In addition, the expert witness testified that he had performed a "substantial review" of the other agent's analysis to assure that it "was correct, based on the evidence."

Moreover, the requisites of rule 702 of the Federal Rules of Evidence apparently were met. Soulard does not argue that the witness was not properly qualified, nor that the witness' testimony did not assist the jury to understand the procedure that was the basis for the Government's bank deposits method of proof. *See* Fed.R.Evid. 702.

■ A trial court has wide discretion to admit expert testimony. *United States v. Fleishman*, 684 F.2d at 1336. On the above facts, the District Court did not abuse that discretion. *See Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.*, 466 F.2d 722, 727 (7th Cir. 1972) ("It is not necessary ... that every person who assisted in the preparation of the original records or the summaries be brought to the witness stand."). *Cf. United States v. Mortimer*, 118 F.2d 266, 269–70 (2d Cir.1941) (stating the general rule that statements compiled from voluminous records according to a practicable and accurate method are admissible on the testimony of a supervising agent).

### b. *Explanation of the Bank Deposits Method*

Soulard next argues that, even if the expert witness had properly incorporated the other agent's work, the bank deposits analysis should not have been admitted because the Government failed "to present a step-by-step explanation of how it analyzed [the] bank records" with respect to alleged understatements of gross receipts and alleged understatements of gross income. Because of this omission, Soulard contends, the jury was unable to evaluate the procedure the Government used when it analyzed Soulard's bank records. This contention has no merit.

The record demonstrates that the expert witness' testimony included an explanation of how the bank deposits method of proof operated in respect to the pertinent bank records exhibits. Our review of the entire record, including the expert witness' testimony, leads us to conclude that the Government adequately explained how it analyzed Soulard's bank records. Moreover, the District Court properly instructed the jury as to the bank deposits method of proof. On this record, the jury was well able to evaluate the bank deposits analysis. The District Court did not abuse its wide discretion when it admitted the bank deposits testimony of the expert witness.

### 4. *Use of Summary Charts*

Fourth, Soulard claims that the District Court committed reversible error by allowing the improper use of the Government's summary charts. The District Court ruled that the summary charts were not to be admitted as evidence but were to be used as "testimonial aids" during the summarizing testimony of the expert witness and during closing argument. Soulard argues that the District Court permitted the Government improperly to use the charts "in lieu of evidence explaining how its bank deposits analysis was developed, instead of using them as an aid to an understanding of such evidence." Based on our review of the pertinent case law and the record, we reject this contention.

 While a trial court has some discretion, the use of summary charts is not without limits. *See Holland v. United States*, 348 U.S. 121, 128, 75 S.Ct. 127, 131, 99 L.Ed. 150 (1954) (admonition to guard against situations in which figures, computations, and charts acquire "an existence of their own, independent of the evidence which gave rise to them"). Our Circuit has determined that the following precautionary measures should be taken when summary charts are used:

1. The trial court, out of the presence of the jury, should carefully examine the summary charts to determine that everything contained in them is supported by the proof. *United States v. Abbas*, 504 F.2d 123, 124 (9th Cir.1974), *cert. denied*, 421 U.S. 988, 95 S.Ct. 1990, 44 L.Ed.2d 477 (1975).

Here, the District Court conducted a hearing, out of the jury's presence, wherein the court analyzed the summary charts in view of the evidence introduced and discussed with the parties the various possible uses of the charts.

2. The trial court should allow the charts to be used as a testimonial aid for witnesses and as a visual aid for counsel in argument, but should not admit the charts as evidence or allow their use by the jury during deliberations. *Id.* at 125.

Here, the District Court ruled that the charts were to be used only as a testimonial aid while the expert witness was on the stand and while counsel presented their closing arguments.

Moreover, the District Court gave a cautionary instruction regarding the jury's use of the charts, taking the appropriate cautionary language directly from *Abbas*.

On this record, the manner in which the District Court directed limited use of the summary charts and cautioned the jury as to their use and function met the standards prescribed in *Abbas*. There was no abuse of discretion in allowing the use of the summary charts.

### C. COMPARISON OF REPORTED GROSS RECEIPTS FROM SALE OF ICE CREAM

 Soulard contends that the District Court abused its discretion by admitting evidence comparing Soulard's reported gross receipts per gallon of ice cream mix with those of various subfranchisees. Soulard claims the exhibits relating to (1) the number of gallons of ice cream sold and delivered to Soulard and various subfranchisees, and (2) the gross receipts reported on the respective tax returns of the various subfranchisees should not have been admitted into evidence. Soulard argues these exhibits were either not relevant, and thus inadmissible under rule 402 of the Federal

Rules of Evidence,[5] or of such little relevance that they should have been excluded under rule 403 of the Federal Rules of Evidence.[6] Soulard also argues that the exhibits should have been excluded under rule 106 of the Federal Rules of Evidence[7] because they did not contain information as to all of the subfranchisees. Finally, Soulard contends that the testimonial use of a summary chart, which compared the estimates of gross receipts reported by Soulard and those reported by various subfranchisees, was improper because the underlying evidence was inadmissible. We hold that the District Court did not err with respect to the "gross receipts" evidence.

The exhibits were proffered to show that Soulard was reporting less gross receipts per gallon of ice cream mix, based on the average yield of ice sales per gallon, than the gross receipts per gallon reported by other subfranchisees.

The prosecution replies that the following evidence in the record permitted the above-stated inference to be drawn: (1) testimony that approximately 48 three-ounce cones could be dispensed from one gallon of mix, and that these cones sold for at least $.30 each during the years in question, thereby allowing the inference that $14.40 of receipts would result from the sale of one gallon of mix; (2) testimony that the average gross receipts from one gallon of mix ranged from $14.00 to $18.00; and (3) testimony that a manual existed that prescribed standard methods for preparing the ice cream mix as well as standard amounts for ice cream in cones.

Soulard claims that, because of the differences in circumstances surrounding each business, the evidence's probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Soulard cites numerous variables: (1) number of employees, (2) time devoted to the business, (3) territories, (4) ice cream mix formulas, (5) occasional dumping of ice cream mix due to spoilage, and (6) resale of ice cream mix by Soulard to one or more of the subfranchisees.

On this record, the District Court did not err by ruling that the evidence was relevant. Whether the evidence should have been excluded because of the danger of confusion of the issues or misleading the jury is a closer issue. Indeed, it may have been preferable to exclude the "gross receipts" evidence; nonetheless, our review of the record convinces us that the District Court did not abuse its discretion in admitting that evidence.

Soulard also contends that the exhibits should have been excluded under rule 106 of the Federal Rules of Evidence.

This contention is without merit. First, the record shows that Soulard failed to object timely to the evidence as being "incomplete." Second, even if Soulard had objected timely, rule 106 would not have required the exclusion of the exhibits—it would merely have allowed Soulard to compel the Government to introduce evidence as to the other subfranchisees on a showing that the new evidence "ought in fairness ... be considered contemporaneously ...." *See* Fed.R.Evid. 106.

---

5. Fed.R.Evid. 402 provides in pertinent part:
 All relevant evidence is admissible .... Evidence which is not relevant is not admissible. Fed.R.Evid. 401 provides a definition of relevant evidence:
 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

6. Fed.R.Evid. 403 provides:
 Although relevant, evidence may be excluded if its probative value is substantially out-

weighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

7. Fed.R.Evid. 106 provides:
 When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

■ Finally, since the District Court did not abuse its discretion by admitting the documentary evidence comparing Soulard's business with businesses of some of his subfranchisees, it did not commit error by allowing the limited use of a summary of that evidence.

## D. EXTRINSIC ACTIONS OF SOULARD

■ Soulard claims that the District Court abused its discretion by admitting "highly prejudicial" evidence of certain activities that were extrinsic to the offenses charged in the indictment. Soulard argues: (1) that the record does not support the admissibility of evidence pertaining to any of these activities under rule 404(b) of the Federal Rules of Evidence;[8] (2) that even if admissible thereunder, the evidence should have been excluded under rule 403 of the Federal Rules of Evidence;[9] and (3) that the District Court compounded its "error" by failing to give a limiting instruction. We hold that the District Court properly exercised its discretion with respect to this evidence.

The challenged testimony of Bender and the challenged unsigned order, both pertaining to the purchase of an ice cream truck, were offered to show two of the four elements of Count VI (the false return charge for Soulard's individual tax return for 1977). This transaction, when considered with Soulard's subsequent sale of the same truck in 1977 for a greater amount, tended to show: (1) that Soulard incurred personal income in 1977 which he failed to report; and (2) that Soulard knew that he had engaged in a profitable transaction and, therefore, knew that he had incurred personal income from the sale of the truck.

Likewise, the challenged testimony of Studley, regarding her purchase of a truck in disrepair from Soulard for $14,000 in 1977 (which he later repossessed), tended to show the same elements.

It does not appear to us that the above evidence was proof that Soulard had "misbehaved" on other occasions, from which the jury was invited to infer that he had "misbehaved" in the filing of his tax returns. It was evidence tending to show elements of the crimes with which he was charged; therefore, the evidence was admissible under rule 404(b) of the Federal Rules of Evidence. *See United States v. Carrillo,* 561 F.2d 1125, 1127 (5th Cir.1977) (evidence of "unsavory business dealings" admissible when "inextricably tied to the basic elements of proof of filing false tax returns"). It was relevant because it bore directly on the charged offenses.

The harder question is whether under rule 403 of the Federal Rules of Evidence the prejudice to Soulard substantially outweighed the probative value of the evidence. We cannot conclude, however, that the balance struck by the District Court amounted to an abuse of discretion. The "unsavory business dealings" do not, to us, appear to have had such an inflammatory effect as to have unfairly prejudiced Soulard.

■ The challenged testimony of Cooper that various subfranchisees met in April 1976 to discuss grievances against Soulard is also a difficult issue. The testimony was not being offered for proof of character; rather, it was being offered to show the income potential of Soulard and the income potential of various subfranchisees. The evidence, then, was relevant to the bank deposits method of proof. *See* Fed.R.Evid. 401.

The problem is that the evidence is not especially probative, yet it creates a fairly strong possibility of prejudice to Soulard. Thus, the exclusion of the evidence would have been preferable.

---

**8.** Fed.R.Evid. 404(b) provides in pertinent part:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**9.** *See supra* note 6.

But this evidence was cumulative to the earlier testimony of another witness, to which Soulard did not object. Therefore, even if it was error to admit the evidence, it was not prejudicial error. This, along with the closeness of the question, leads us to conclude that the District Court did not abuse its discretion.

■ Nor did the District Court abuse its discretion in respect to the challenged testimony of Conway. Conway stated at the end of a testimonial sequence that Soulard was then currently operating a distributorship without approval of the parent corporation. During the bench conference on the matter, the District Court observed that the remark was "in the flow of an answer that the witness gave" and that the statement did not have such an "inflammatory effect" as to require any curative measures. Our review of the record leads us to the same conclusion. There was no abuse of discretion.

■ Soulard also contends that the District Court's failure to give a limiting instruction concerning the evidence of Soulard's extrinsic actions was reversible error. This contention has little merit. The prejudicial nature, if any, of the evidence was so slight as not to warrant an immediate limiting instruction. Furthermore, the District Court, in its general charge, instructed the jury that Soulard was not on trial for any conduct other than that alleged in the indictment. This instruction, while broad, minimized any possible prejudicial effect of the evidence. *See United States v. Moore*, 522 F.2d 1068, 1079 (9th Cir.1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976). There was no reversible error here. *See id. Cf. United States v. Brown*, 562 F.2d 1144, 1148 (9th Cir.1977) (failure to give limiting instruction not reversible error).

## II. JURY INSTRUCTIONS

### A. STANDARD OF REVIEW

■ The standard of review is whether the District Court abused its discretion in its choice of language or formulation of its instruction regarding: (1) the bank deposits method of proof, and (2) Soulard's extensive use of currency. *See United States v. Abushi*, 682 F.2d 1289, 1299 (9th Cir.1982). *See generally Citizens to Preserve Overton Park v. Volpe*, 401 U.S. at 416, 91 S.Ct. at 823 (elements of "abuse of discretion" test). A trial court is given substantial latitude in tailoring jury instructions so long as they fairly and adequately cover the issues presented. *United States v. Abushi*, 682 F.2d at 1299. Neither party, including a criminal defendant, may insist upon any particular language. *Id.* (quoting *United States v. James*, 576 F.2d 223, 226 (9th Cir.1978)).

### B. INSTRUCTION REGARDING THE BANK DEPOSITS METHOD OF PROOF

Soulard urges that the District Court committed reversible error by refusing his instruction on the bank deposits method of proof. Soulard argues that the instruction given by the District Court improperly stressed the Government's case and insufficiently cautioned the jury as to the dangers involved in his method of proof.

■ In this appeal, Soulard does not direct this Court's attention to specific inadequacies in the language of the District Court's instruction. Nor does he illustrate how his proposed instruction would have remedied the alleged errors. Our review of the District Court's instruction convinces us that the District Court in no way abused its discretion.

The District Court's instruction did not "improperly stress the government's case." The instruction was an accurate statement of the law, *see United States v. Hall*, 650 F.2d at 996 n. 4; *United States v. Helina*, 549 F.2d 713, 715 nn. 1 & 2 (9th Cir.1977). The instruction adequately explained how the jury should use the bank deposits method of proof to determine whether the corporation had substantial unreported gross receipts and whether Soulard had substantial unreported gross income. And it made clear that any evidentiary discretion was within the province of the jury.

■ Nor did the instruction "insufficiently caution the jury about this method of proof." The District Court correctly instructed the jury that: (1) it was not required to draw the inference that any excessive deposits represented unreported income of Soulard during the years in question, (2) the bank deposits method of proof was a circumstantial way of establishing unreported income, and (3) the Government had the burden to prove beyond a reasonable doubt that excess deposits represented unreported income. These instructions adequately cautioned the jury as to the dangers of this method of proof.

Furthermore, there is nothing in Soulard's proposed instruction that was not otherwise covered by the general charge.

Thus, the District Court's instruction "fairly and adequately cover[ed] the issues presented," even if not phrased in the "particular language" Soulard desired. *See United States v. Abushi*, 682 F.2d at 1299. There was no abuse of discretion.

## C. INSTRUCTION REGARDING SOULARD'S EXTENSIVE USE OF CASH

Soulard contends that the District Court committed reversible error by instructing the jury to conclude that Soulard's "continuous use of large amounts of currency when conducting transactions [was] an unusual and highly suspicious circumstance."[10] Soulard charges that the District Court's formulation of the instruction: (1) improperly "invaded the province of the jury as the finders of fact" in violation of the Sixth Amendment right to a trial by an impartial jury, and (2) directed the jury to accept a "tenuous and arbitrary" connec-

tion between a proved fact and the ultimate presumed fact in violation of the Fifth Amendment right to due process. We hold that the District Court did not commit reversible error.

■ First, a review of the instruction shows that the District Court did not improperly invade the province of the jury. The District Court stated that there had been evidence introduced at trial that Soulard made extensive use of currency in conducting transactions. This was true. The court, however, did not instruct the jury to conclude that Soulard had, in fact, extensively used currency.

Nor did the court instruct the jury to conclude that Soulard's use of cash established that his actions were willful. The court instructed the jury only that it "may consider" the extensive use of currency as an indication that Soulard "did not intend to report his income correctly." Thus, the District Court did not "invade the province of the jury as the finders of fact," as it left to the jury the determination of what evidentiary use to make of this proof.

■ Second, a review of the instruction shows that there was no due process violation. Soulard claims that the connection between "the proven fact" (the extensive use of currency) and what he contends is "the ultimate presumed fact" ("that [Soulard] was involved in 'highly suspicious' activities") is "tenuous and arbitrary." Yet, the "presumed fact" here is that Soulard "did not intend to report his income correctly." A connection properly may be drawn between the extensive use of currency and willful criminal tax activity. *See*

10. The District Court gave the following instruction:

There has been evidence introduced at this trial that the defendant made extensive and numerous purchases of cars, cashier's checks and other items in currency totaling thousands of dollars each year. While each of us must transact some business on a cash basis from time to time, we recognize that it is not a commonly accepted business practice to continuously complete large transactions by dealing in cash and currency. The use of checks in such affairs not only facilitates

record keeping in our business practices, but is also more convenient.

Certainly, the continuous use of large amounts of currency when conducting transactions is an unusual and highly suspicious circumstance. If you find that the defendant did not report all his income when he filed his individual returns for the years 1975 through 1977, you may consider this failure combined with his extensive use of currency is [sic] one more indication that the defendant did not intend to report his income correctly.

*United States v. Gallo*, 659 F.2d 110, 115 (9th Cir.1981); *United States v. Hamilton*, 620 F.2d 712, 717 (9th Cir.1980). This "connection" did not violate Soulard's Fifth Amendment due process rights.

Thus, when read in context, the jury instruction violated neither the Fifth nor Sixth Amendment. While we think it would have been preferable to leave the thrust of the instruction for argument, the District Court, by giving the instruction, did not so abuse its discretion as to require reversal.

## III. MOTION FOR MISTRIAL BASED ON EXTRANEOUS COMMUNICATION BY A JUROR TO THE PROSECUTOR

Soulard charges that the District Court committed reversible error by denying Soulard's motion for mistrial based on an extrajudicial communication between a juror and the prosecuting attorney.

### A. STANDARD OF REVIEW

 In general, the standard of review for a trial court's decisions regarding jury incidents is abuse of discretion. *See United States v. Hendrix*, 549 F.2d 1225, 1227–29 (9th Cir.), *cert. denied*, 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977); *United States v. Armstrong*, 654 F.2d 1328, 1332 (9th Cir.1981), *cert. denied*, 454

U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 (1982). In responding to charges of juror misconduct or bias, a trial court has the power "to discriminate on the basis of their content, their source, and the nature of the alleged misconduct." *United States v. Hendrix*, 549 F.2d at 1227–28 & n. 2. A trial court has considerable discretion in determining whether to hold an investigative hearing on allegations of jury misconduct or bias and in defining its nature and extent. *Id.* at 1227.

 Our review ultimately is limited to determining whether the District Court, in view of all the circumstances, so abused its discretion that Soulard must be deemed to have been deprived of his Fifth Amendment due-process or Sixth Amendment impartial-jury guarantees. *Id.* at 1229. We hold that, under the law of our Circuit, the District Court did not commit reversible error in denying Soulard's motion for mistrial.

### B. DISCUSSION

First, the prosecutor's rendition of the jury incident seems to indicate that the incident was harmless. The conversation appears to have been initiated by the juror, to have lasted no more than 20 seconds, and to have had nothing to do with the trial or any matters at issue.[11] Furthermore,

---

**11.** The prosecutor's rendition of the incident is reflected in the Reporter's Transcript:

> MR. MACISZEWSKI [counsel for Soulard]: Your Honor, may I bring something up on the record now and—
>
> THE COURT: All right. Court is still in session ....
>
> MR. MACISZEWSKI: In returning to the courtroom just before we reconvened a few moments ago I noticed what appeared to be—I underscore appeared to be—conversation between Mr. Strother and one of the jurors. I believe his name is Mr. Thomas. I would like to have counsel for the government advise me and the Court whether what appeared to me so was in fact so, and, if so, the explanation for it.
>
> THE COURT: Mr. Strother.
>
> MR. STROTHER [counsel for the Government]: Of course. Your Honor, I went out the door. I think Mr. Thomas—I believe that's the juror's name—preceded me immediately, and so he turned around and asked

> me—he said with respect to the weather back east—back east he said that he'd heard that the ocean had been causing some storms and that there had been some bad weather back there, and I said: I'd heard the same thing, and, in fact, I noticed that the coastal storms had wiped out a portion of Bethany Beach which is part of the beach I like to go to as well as Rehoboth during the summer time, and that was it.
>
> THE COURT: How long did this conversation last?
>
> MR. STROTHER: I would say no more than about fifteen or twenty seconds.
>
> THE COURT: Was this conversation initiated by Mr. Thomas or yourself?
>
> MR. STROTHER: Yes, Mr. Thomas.
>
> THE COURT: Was there any discussion at all with respect to the evidence—
>
> MR. STROTHER: Oh, No.
>
> THE COURT: —or this case?
>
> MR. STROTHER: Absolutely not. This case wasn't even mentioned even in the slightest.

**1306**

Soulard at trial appeared to accept the prosecutor's rendition of the incident when his counsel responded "very well" and did not ask for a hearing, to examine the prosecutor, or to examine the juror.[12]

■ Second, the District Court's treatment of the incident did not constitute reversible error. Contrary to Soulard's contentions, the District Court was not *obligated* under Ninth Circuit law to conduct an investigative hearing once it was alleged that an extrajudicial communication had occurred between a juror and a third person. *See id.* at 1227. Here, the District Court, in the presence of all interested parties, investigated the juror-misconduct allegation. While it was not a "full-blown investigative hearing," the inquiry conducted by the District Court was sufficient under the circumstances. Thus, on this record, we cannot conclude that Soulard "must be deemed to have been deprived of his Fifth or Sixth Amendment rights."[13] *Id.* at 1229. The recent case of *Rinker v. County of Napa*, 724 F.2d 1352 (9th Cir.1983) (per curiam) is clearly distinguishable and does not alter the outcome of this case.

## IV. PROSECUTORIAL COMMENTS

Soulard argues: (1) that the prosecutor's final rebuttal argument contained imper-missible references to Soulard's failure to testify, *see Griffin v. California*, 380 U.S. 609, 613–15, 85 S.Ct. 1229, 1232–33, 14 L.Ed.2d 106 (1965); and (2) that the District Court erred by not immediately cautioning the jury that Soulard had a "right to remain silent and not offer evidence."

## A. STANDARD OF REVIEW

■ The test to judge impermissible comment upon a defendant's assertion of his Fifth Amendment right not to testify is whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify. *United States v. Fleishman*, 684 F.2d at 1343. A prosecutor may properly comment upon the defendant's failure to present exculpatory evidence, so long as it is not phrased to call attention to the defendant's own failure to testify. *See United States v. Passaro*, 624 F.2d 938, 944 (9th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 842 (1981).

## B. DISCUSSION

■ The comments Soulard finds objectionable did not directly refer to Soulard's failure to take the stand;[14] the comments

---

THE COURT: Very well. The Court is satisfied that it was just inadvertent conversation with no effect whatsoever in the course of this trial or the handling of this trial.
MR. MACISZEWSKI: Very well.
THE COURT: Thank you.

**12.** *See id.* Soulard made no motion for mistrial at the time the prosecutor gave his rendition of the incident. Soulard moved for a mistrial the following day. Even then, however, Soulard did not request a more thorough investigation, apparently accepting the prosecutor's earlier rendition as a full airing of the matter.

**13.** Soulard strongly urges this Court to adopt a rule whereby any extrajudicial communication between a juror and the prosecutor is a per se violation of a criminal defendant's constitutional right to a fair trial. While Soulard makes a strong case, we think the better approach is that adopted by the Ninth Circuit with regard to jury incidents in general. *See United States v. Hendrix*, 549 F.2d 1225, 1227–29 (9th Cir.), *cert. denied*, 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977). Under our Circuit's approach, the trial

court is given the discretion to tailor its response to the situation with which it is confronted, subject, of course, to constitutional restraints. This approach avoids the harsh rigidity of a per se rule and, at the same time, protects the accused's right to a fair trial.

**14.** The allegedly impermissible comments and Soulard's objection to them are reflected in the Reporter's Transcript:
MR. STROTHER: Now you have heard Mr. Maciszewski during the course of his argument state that he would develop and he'd tell you reasons why he decided not to put on any defense. Let me suggest to you the real reason why he didn't put on any defense was simply because the government's evidence, as adduced before you—the witnesses and documents—showed beyond any doubt at all that his client's guilty of the crimes charged, and that's why no defense was put on.
MR. MACISZEWSKI: Your Honor, I'm sorry, I have to interrupt at this point in time. I respectfully suggest that government counsel's argument right now is contrary to the consti-

referred to defense counsel, rather than to Soulard by direct reference. Moreover, they referred mainly to the strength of the Government's case, and to the extent they referred to the defense, they were a fair reply to arguments raised by defense counsel in closing argument as to the reasons why no defense was put forward. *See United States v. Dumas,* 658 F.2d 411, 415 (5th Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982). Thus, when taken in context and fairly construed, the comments do not appear to have been manifestly intended or to have been of such a character that the jury would necessarily take them as a comment on Soulard's failure to testify.

Even if the prosecutor had directly referred to Soulard's failure to testify, our Court has been reluctant to reverse where, as here, the prosecutorial comment was a single isolated statement, did not stress an inference of guilt from silence as a basis of conviction, and was followed by curative instructions. *See United States v. Armstrong,* 654 F.2d at 1336. *See also Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) (no reversible error where error was harmless beyond a reasonable doubt).

■ Moreover, a cautionary instruction concerning Soulard's right not to present evidence and the fact that no adverse inferences could be drawn against him from such a failure was given by the District Court in its general charge to the jury. This was sufficient to cure any prejudice Soulard may have suffered from the allegedly impermissible comment. *See United States v. Fleishman,* 684 F.2d at 1336. The District Court did not commit reversible error by not giving the instruction during the prosecutor's rebuttal argument.

## V. MOTION FOR JUDGMENT OF ACQUITTAL

Soulard argues that his motion for a judgment of acquittal pursuant to rule 29 of the Federal Rules of Criminal Procedure was erroneously denied because the properly admitted evidence was insufficient to sustain a conviction of the offenses charged in the indictment.

### A. STANDARD OF REVIEW

■ Rule 29(a) of the Federal Rules of Criminal Procedure requires the trial court to grant a motion for judgment of acquittal "if the evidence is insufficient to sustain a conviction." The trial court must determine whether, viewing the evidence in the light most favorable to the prosecution, the jury could reasonably find the defendant guilty beyond a reasonable doubt. *United States v. Hazeem,* 679 F.2d 770, 772 (9th Cir.), *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982). On appeal, we apply the same test in reviewing the trial court's decision. *Id.*

### B. DISCUSSION

■ Viewing all the evidence in the light most favorable to the Government, we are convinced that a rational trier of fact could easily have concluded that Soulard was guilty, beyond a reasonable doubt, of willfully subscribing false corporate and individual tax returns. The District Court did not err by denying Soulard's motion for judgment of acquittal.

The judgments of conviction are

AFFIRMED.

tutional protection afforded to Mr. Soulard to remain silent, not to be compelled to bring any evidence, to rest on the government's proof. I would object and I would ask the Court to instruct that it is improper argument and to instruct the jury accordingly.

MR. STROTHER: I submit Your Honor, that is certainly not the case at all. No constitutional rights have been infringed upon or even referred to. I submit that that door has been opened by counsel. And we're simply referring to the government's massive weight of evidence here. That's all.

THE COURT: The objection is overruled. You may continue with your argument.