880 F.2d 1324
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 UNITED STATES of America, Plaintiff-Appellee,
v.
Alphonso LEWIS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frank LOBASSO, aka Frank Bass, aka Frank Labasso,
Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frederick TERRAZO, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James McGUIRE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald A. SMITH, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael T. SMITH, Defendant-Appellant.
 Nos. 88-5011, 88-5028, 88-5031, 88-5035, 88-5065 and 88-5070.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 9, 1989.
Decided July 20, 1989.
 Before FLETCHER, PREGERSON and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The six appellants in this case were jointly tried and convicted for using the mails to accomplish a fraudulent gem investment scheme, in violation of 18 U.S.C. Sec. 1341 (1982). Their consolidated appeals attack the district court's denial of their severance motions, the sufficiency of the evidence, multiple evidentiary and cross-examination rulings, and the district court's treatment of two proposed jury instructions. We affirm.
 
 DISCUSSION
 I. Denial of the severance motions
 
 3
 The appellants claim that it was error for the district court to deny their severance motions. The trial court's decision to deny the appellants' motion for severance of the trial is reviewed for abuse of discretion. United States v. Van Cauwenberghe, 827 F.2d 424, 431 (9th Cir.1987), cert. denied, 108 S.Ct. 773 (1988). The moving party must show that the joint trial was so prejudicial that the trial judge could exercise his discretion only by ordering a separate trial. United States v. Ramirez, 710 F.2d 535, 545-46 (9th Cir.1983).
 
 
 4
 1. Mutually exclusive defenses--all appellants
 
 
 5
 All appellants argue that their defenses were so antagonistic as to require separate trials. In this circuit, "[a]ntagonism between defenses is not enough.... Only where the acceptance of one party's defense will preclude the acquittal of the other party does the existence of antagonistic defenses mandate severance." Ramirez, 710 F.2d at 546 (citation omitted).
 
 
 6
 The court did not abuse its discretion by denying the severance motions. Acceptance of one party's defense did not preclude acquittal of the other parties in this case. The defense of Michael and Ronald Smith was that they were ignorant of the fraud perpetrated by the salespeople. The salespeople's defense was that they were unknowing conduits of the Smiths' fraud. But assuming the jury believed that the Smiths were ignorant of the salespeoples' acts, the jury could still find that the salespeople lacked fraudulent intent. Likewise, if the jury believed that the salespeople merely repeated the sales pitch given to them by the Smiths, it could still find the Smiths acted in good faith.
 
 2. The Smiths
 
 7
 The Smiths sought to introduce evidence that appellant Alphonso Lewis engaged in an allegedly fraudulent coin operation and other alleged acts of fraud as late as two years after he was fired from Crandall. The court excluded the evidence. The court reasoned that the evidence was either impermissible character evidence under Fed.R.Ev. 404(b), or inadmissible under Fed.R.Ev. 403. The Smiths argue that the court, in its effort to avoid prejudicing Lewis in the joint trial, precluded them from presenting a defense and deprived them of a fair trial.
 
 
 8
 The Smiths' contention involves both the court's evidentiary rulings, as well as its decision to hold the joint trial. As mentioned above, the court's decision not to sever the trial is reviewed for abuse of discretion. A court's evidentiary rulings are also reviewed for abuse of discretion. United States v. Soulard, 730 F.2d 1292, 1296 (9th Cir.1984).
 
 
 9
 Under Rule 404(b), character evidence is inadmissible unless offered to prove, among other things, knowledge and intent. The Smiths argue that Lewis' prior acts were admissible under Rule 404(b) because they were instances of fraud, which tend to establish Lewis' fraudulent knowledge and intent while working for Crandall. Assuming Lewis' acts were relevant to establish his knowledge and intent here, the allegedly fraudulent nature of the acts had yet to be determined. The court was within its discretion to exclude the evidence under Rule 403, to avoid the delay and confusion that such a determination would entail.
 
 
 10
 Exclusion of the allegedly fraudulent acts did not result in an unfair trial for the Smiths or the other appellants. Lewis was not exonerated at the other appellants' expense. There was other evidence, such as evidence of the representations Lewis made to investors, tending to show that Lewis knowingly participated in fraud while working at Crandall.
 
 3. LoBasso and McGuire
 
 11
 Appellants Frank LoBasso and James McGuire claim that failure to sever the trial deprived them of a fair trial because the evidence produced against co-defendants Lewis, Frederick Terrazo and James Girard "spilled over" to prejudice the jury against them. They also argue that the complexity of the case, coupled with the great disparity of the evidence between co-defendants, made it unreasonable to expect a jury to compartmentalize the evidence as to each defendant.
 
 
 12
 Complexity and disparity of evidence are factors to consider, but "[u]ltimately, the question is whether the jury can reasonably be expected to compartmentalize the evidence as it related to separate defendants." United States v. Brady, 579 F.2d 1121, 1128 (9th Cir.1978), cert. denied, 439 U.S. 1074 (1979).
 
 
 13
 We disagree that the complexity of the case made it unreasonable to expect that the jury could compartmentalize the evidence. The central issue was straightforward: whether the defendants knowingly misrepresented the investment potential at Crandall, the sales commissions, and the liquidity of the investments. The number of counts did not add complexity because the twelve counts corresponded to twelve different mailings pursuant to one same scheme.
 
 
 14
 The disparity of the evidence against Terrazo, Lewis, and Girard compared to that against LoBasso and McGuire is also not as great as LoBasso and McGuire suggest. LoBasso and McGuire's argument rests on their assertion that they did not make the egregious representations that the salespeople made. The assertion is unconvincing. Virginia Lukei and Edward Wilson testified that LoBasso made similar misrepresentations, and Robert Sandate testified that McGuire did the same.
 
 
 15
 Finally, the jury's actions suggest that the case was not excessively complex and that the jury ably compartmentalized the evidence. The jury returned a guilty verdict against the Smiths the same day it began deliberating, and against LoBasso and McGuire the next day. Also, although all the appellants were charged with all twelve counts, they were convicted only for the counts relating to those customers with whom each dealt.
 
 II. Evidentiary Rulings
 
 16
 The appellants claim that the district court committed numerous errors in its evidentiary rulings. A court's nonconstitutional evidentiary rulings are reviewed for abuse of discretion. Soulard, 730 F.2d at 1296. An abuse of discretion occurs if the court does not consider the relevant factors or has committed a clear error of judgment. Id. The discretion is also limited by the appellant's due process right to present a defense. United States v. Whitman, 771 F.2d 1348, 1351 (9th Cir.1985). Nonconstitutional errors are not reversible unless it is more likely than not that they affected the verdict. United States v. Meyers, 847 F.2d 1408, 1412 (9th Cir.1988).
 
 
 17
 1. Ernest and Whinney ("E & W") report and auditor's summary
 
 
 18
 the district court allowed the Government to introduce evidence of E & W's summary report of Crandall's business records for a fifteen-month period and of an auditor's summaries based on the E & W report. This court has held that summaries of voluminous records are admissible under Rule 1006 only if (a) the proponent of the summaries makes a showing that the underlying records are admissible; and (b) the underlying documents were made available to the opposing party for inspection. United States v. Johnson, 594 F.2d 1253, 1254-56 (9th Cir.), cert. denied, 444 U.S. 964 (1979). There is no dispute that the documents were made available to the appellants.
 
 
 19
 The record contradicts the Smiths' argument that there was no showing of the admissibility of the records underlying the E & W report. The underlying records were Crandall's business records.
 
 
 20
 A business record is admissible under Rule 803(6) if the record is (1) made by a regularly conducted business activity; (2) kept in the "regular course of business"; (3) made pursuant to the regular practice of that business; and (4) made by a person with knowledge or from information transmitted by a person with knowledge. Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1258 (9th Cir.1984).
 
 
 21
 The evidence at trial clearly established Crandall as a regular business activity. The remaining requirements of the Rule are met by the testimony of John Olson. Olson testified that he (1) was Crandall's accounting manager during the period of coverage of the E & W report; (2) kept records relating to Crandall's investors while he was the accounting manager; (3) tried to keep the records accurately; (4) provided E & W with Crandall's records so that E & W could produce its reports; and (5) did not withhold any records from E & W. We reject the Smiths' suggestion that the report was otherwise unreliable.[1]
 
 
 22
 The district court allowed evidence of an auditor's further summary of the E & W report. Since the report is admissible and reliable, we see no reason to hold that the auditor's summary of the report should not be.
 
 2. E & W disclaimer letter
 
 23
 The district court excluded a letter written by E & W to Crandall's receiver. The letter repeated the testimony of Terry Joyce, E & W's accounting manager, that E & W expressed no opinion about the validity of the report because it did not conform to accepted auditing standards. The court was therefore within its discretion to exclude the letter as cumulative evidence.
 
 
 24
 3. Evidence of subsequent fraudulent acts of Lewis, Terrazo, and Girard.
 
 
 25
 The Smiths claim they should have been allowed to introduce evidence of subsequent fraudulent activity by Crandall managers. The trial judge was within his discretion to exclude the evidence under Rule 403. At the very least, the evidence would have caused delay by requiring a determination of whether the managers' acts were in fact fraudulent.
 
 4. Videotape showing
 
 26
 The district court allowed the Government to play a videotape of a television commercial before the jury, where a visual message appears with the words "Crandall 30 percent per year profit." The Smiths now argue that the videotape was inadmissible as irrelevant because there is no evidence that any of the investors involved in the case saw the commercial.
 
 
 27
 The videotape was admissible as direct evidence of the offense, because the commercial was an integral part of the fraudulent scheme with which the appellants were charged. We reject the defendants' suggestion that a precondition of admissibility is that the investors involved in the case have seen and relied on the commercial. We see no reason why the admissibility of the direct evidence should turn on the victim's knowledge of the commercial. We think it enough that the perpetrators of the fraud knew of the commercial, and we are satisfied Crandall people knew that the commercials were aired.
 
 
 28
 5. Investor testimony for investing with Crandall
 
 
 29
 The district court allowed investor Fern Wolfe to testify that she invested in Crandall because her husband was dying of Alzheimer's disease and she needed money. The court also allowed Barbara Clark to testify that her father passed away and she had money to invest, and Dorothy Wright to testify she invested because she needed an income for her son, who could not make it on his own.
 
 
 30
 We agree with the appellants that the district court abused its discretion by allowing the evidence. The inflammatory nature of the evidence increased the danger of potential prejudice against the defendants in a manner outweighing the slim probative value of the evidence. We must reverse a district court's improper evidentiary rulings only if the error was not harmless. United States v. Soulard, 730 F.2d at 1296; see also Fed.R.Crim.P. 52(a). The error is not harmless if it is more probable than not that the erroneous admission of the evidence affected the jury's verdict. Soulard, 730 F.2d at 1296. In light of the other evidence against the appellants, we conclude that the error was harmless.
 
 6. Cross-examination of Herman Almond
 
 31
 Virginia Lukei testified for the Government that she solicited investments using a sales script prepared in part by the Smiths. The Smiths called Herman Almond, a Government investigator, who testified that his report stated that Lukei said she did not believe the Smiths knew of the contents of the scripts prepared by appellant Terrazo. On cross-examination, the Government elicited from Almond that Lukei had also told him that she thought the Smiths knew about 80% to 90% of what went on in the sales floor.
 
 
 32
 The district court did not abuse its discretion by allowing Lukei to testify about the Smiths' general knowledge of the salespeople's practices. Once counsel for the Smiths sought to impeach Lukei's credibility with Almond's recollections of his interview with Lukei, the Government became entitled to elicit other parts of the interview.
 
 
 33
 7. Evidence of the Securities Exchange Commission ("SEC") investigation
 
 
 34
 The SEC investigated Crandall and appointed a receiver in September 1984. Before trial, the Government agreed not to present evidence of the receivership, but still wished to present evidence of the SEC investigation. The Smiths presented evidence of the receivership. Both items of evidence were received.
 
 
 35
 The appellants LoBasso and McGuire argue that the court abused its discretion by receiving the evidence. We disagree. We recognize it is improper to introduce, at a criminal trial, evidence of a civil judgment on the same issues as the ones disputed at the criminal trial. Given the different standards of proof, the civil adjudication cannot bind the criminal, see generally One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 235 (1972), and the danger exists the jury might be led to conclude that it has already been conclusively determined that the defendants were engaged in wrongdoing. But there is no conclusive determination flowing from an investigation and a receivership as there is from a civil judgment. We thus do not think that the evidence presented here could lead the jury to believe that the issues of guilt had already been determined against LoBasso and McGuire.
 
 8. Evidence of receiver's conduct
 
 36
 When the equity receiver was appointed to manage Crandall, Crandall had approximately $900,000 in assets. The receiver spent a portion of the money on lawyers' fees and the E & W report. The Smiths sought to introduce evidence of the receiver's actions but the district court excluded the evidence on relevancy grounds. The Smiths claim on appeal that (1) evidence of the conduct of the receiver is relevant to show that Crandall was a bona fide corporation; and (2) that evidence of E & W's fees was relevant to show E & W's bias.
 
 
 37
 We see the existence of $900,000 in assets and conduct of the receiver as requiring different treatment. The evidence of the existence of assets was relevant to show that Crandall was a bona fide corporation because not undercapitalized. The district court did not bar this evidence. The receiver's disbursement of the leftover funds, however, as an issue separate from the existence of assets, is irrelevant to establish Crandall as a bona fide corporation. Thus, evidence of the receiver's conduct was properly excluded.
 
 
 38
 We also agree with the district court that evidence of the fees the receiver paid to E & W was not relevant to show E & W's bias in favor of the Government. Clearly the fees the receiver spent on the E & W report would be relevant to show bias in favor of the receiver, but the receiver is not a party to this case. No evidence is offered that the receiver stood to gain or lose from the Smiths' conviction. There is therefore no basis for the assertion that E & W had any bias in favor of the Government.
 
 9. Insurance coverage
 
 39
 Wolfe testified to making investments with Crandall of over $450,000, but testified she received only $5,000 back from Crandall. The court did not allow the Smiths to show that Wolfe was largely compensated by Crandall's insurer. The court abused its discretion in disallowing the evidence as irrelevant. Evidence that Crandall had secured insurance for the protection of investors tends to show that Crandall operated in good faith. Considering the other evidence against the defendants, however, we conclude the error was harmless.
 
 III. Restrictions to cross-examination
 
 40
 The district court restricted the Smiths' cross-examination of several witnesses. "The scope of cross-examination is within the sound discretion of the trial court and will not be disturbed absent clear abuse of discretion." United States v. Sherman, 821 F.2d 1337, 1341 (9th Cir.1987) (citation omitted).
 
 1. Cross-examination of the E & W manager
 
 41
 The Smiths claim that they had a right to inquire as to the factors that E & W's accounting manager considered in arriving at her definition of "gain" for purposes of determining Crandall's gains during the fifteen-month period covered by the E & W summary report. The manager had previously testified she only considered the differential between what Crandall paid when repurchasing a gem from the customer and the price at which Crandall resold it to another customer. The Smiths then tried to ask her whether she considered other factors, e.g. advertising costs. The court correctly sustained the Government's objection since the witness had already stated which factors she considered.
 
 2. Cross-examination of the auditor
 
 42
 The Smiths sought to cross-examine Janet Chiquet, an auditor for the California Department of Justice, as to the validity and scope of the E & W report. The answers to those questions had already been elicited in the cross-examination of the E & W manager, and they were properly disallowed as cumulative. The Smiths also asked Chiquet whether her summaries of the E & W report excluded certain sales. Since Chiquet had already mentioned what information she had used to prepare her summaries, and the sales referred to were not included, the question was cumulative and properly disallowed.
 
 
 43
 3. Cross-examination of the Government's gemologists
 
 
 44
 Cosmo Altobelli testified on cross that he used the Rappaport Index to evaluate gems, but that the index was just a guide. He testified that he also relied on other sources. Defense counsel's question as to whether the index was used in tax court was properly disallowed as irrelevant. Numerous other questions by counsel were cumulative.
 
 
 45
 Charles Caromona testified about gem market value and the Crandall's mark-up on the gems it sold. The Smiths claim they should have been allowed to ask Carmona whether Carmona should have considered gem certification costs in performing his evaluation. To the extent the question was meant to measure the impact of the omission, the question was cumulative. Carmona had already stated the omission of gem certification costs could affect his evaluation by a factor of 2% to 5%. We fail to see any other relevance to the question.
 
 
 46
 Counsel also sought to elicit information about mark-ups as determined from prices set at a Tucson gem show. Carmona testified he did not rely on the Tucson show for his mark-ups, so the court properly sustained an objection against the question on relevancy grounds.
 
 4. Cross-examination of Thomas Newell
 
 47
 Thomas Newell was a Crandall salesman who testified for the Government. Newell pleaded guilty to one count of mail fraud, based on his mailing of a sales confirmation slip to one Mr. Rembe. That count was dropped as to the appellants in this case.
 
 
 48
 At trial, the court did not allow the Smiths' counsel to ask Newell to identify the investor in connection to whom Newell had used the mails. The appellants claim prejudice, arguing the inference the jury would draw is that Newell pleaded guilty to the same crime with which the appellants were charged, when in fact Newell's count was dropped and they were not charged with the same crimes.
 
 
 49
 Even if there was error, the error was harmless. In part, Newell and the appellants were charged with the same crime. Each count charged represented one use of the mails to execute the fraudulent scheme. But the offense of mail fraud also includes, as essential elements, a showing that the defendants (1) formed a scheme to defraud; and (2) did so with the specific intent to deceive or defraud. Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1399-1400 (9th Cir.1986). See also 18 U.S.C. Sec. 1341. When Newell pleaded guilty to the count with which he was charged, he pleaded guilty to having once used the mails to execute the fraud, but also to devising and knowingly participating in the scheme. Similarly, the conviction of each appellant rests on the jury's determination that they all knowingly participated in the same scheme. Thus, it was not prejudicial that Newell's inability to identify the investor in question might have led the jury to conclude that Newell pleaded guilty to the elements of the offense common to Newell and all the appellants.
 
 
 50
 There remains the possibility the jury might have incorrectly inferred that the appellants were charged with the mailing to which Newell pleaded guilty. We are satisfied this did not occur. The jury convicted each appellant only of those counts where there was evidence that the appellant was involved in the mailing to the investor. The counts before the jury did not include the count related to Newell. There was no prejudice.
 
 
 51
 5. Cross-examination of investor Edward Wilson
 
 
 52
 We agree with the appellants that there was no reason to restrict cross-examination of the investment experience of one of the victims of fraud, Edward Wilson, on relevancy grounds. The evidence would have tended to show that Wilson was less likely to have reasonably relied on Crandall's misrepresentations. Nevertheless, considering the testimony of the other defrauded investors, we do not think the error more likely than not affected the jury's verdict. The error was harmless.
 
 IV. Sufficiency of the Evidence
 
 53
 This court will reverse a conviction for insufficient evidence only if it determines, "viewing the evidence in the light most favorable to the Government, that no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." United States v. Martinez, 806 F.2d 945, 946 (9th Cir.1986), cert. denied, 481 U.S. 1056 (1987). To meet the essential elements of mail fraud, the Government must show that the defendants (1) formed a scheme to defraud; and (2) did so with the specific intent to deceive or defraud; and (3) used the mails in furtherance of the scheme. Serv-Well Furniture, 806 F.2d at 1399-1400.
 
 
 54
 The only issue on appeal is whether there was sufficient evidence that the appellants had the specific intent to defraud.
 
 
 55
 We are satisfied there is ample evidence to justify the conviction of the Smiths. A rational juror could certainly conclude that the Smiths' possessed the required fraudulent intent after learning of the Smiths' bonuses, loans, and the massive transfer of assets to another newly-formed corporation, Global Marketing, Inc., soon after learning of the SEC investigation. There was also expert testimony that Crandall's gem prices were high for investment purposes. Investor Sandate further testified that Ronald Smith and McGuire refused to return him his investment money, despite earlier assurances of liquidity. Investor Colleen Bowers testified to Michael Smith's failure to terminate her margin account as promised.
 
 
 56
 As to the remaining appellants, we likewise conclude the evidence provided by individual investors and by Virginia Lukei and Thomas Newell was sufficient to justify their convictions. There is evidence that each of the appellants made some material representation to at least one investor, either related to investment returns, sales commissions, or promises of easy liquidation. There was also evidence of Crandall's records as showing little or no investor gains, of much higher sales commissions, and of repeated instances when investors were unable to liquidate their gems upon request. This evidence is sufficient to allow a rational juror to become convinced beyond a reasonable doubt that the appellants possessed the fraudulent intent required by the offense.
 
 V. Jury instructions
 
 57
 The appellants claim that the district court erred (1) by giving an imperfect version of a good faith instruction, and (2) by failing to give an instruction on "puffing." A defendant is not entitled to a particular form of an instruction so long as the instructions given fairly and adequately cover the defendant's theories of defense. United States v. Solomon, 825 F.2d 1292, 1295 (9th Cir.1987), cert. denied, 108 S.Ct. 782 (1988).
 
 
 58
 As to the instruction on good faith, our review of the instructions given shows that the district court instructed the jury as to specific intent and as to good faith. The instructions are highly similar to instructions we held adequate in a mail fraud case. United States v. Seymour, 576 F.2d 1345, 1347-48 (9th Cir.), cert. denied, 439 U.S. 857 (1978). The instruction was not an abuse of discretion.
 
 
 59
 As to the "puffing" instruction, a defendant is entitled to an instruction on a theory of defense which has a basis in law. Solomon, 825 F.2d at 1295. However, "[t]he district court ... may refuse a proposed instruction so long as the instruction given, viewed as a whole, covers that theory." United States v. Makhlouta, 790 F.2d 1400, 1505 (9th Cir.1986).
 
 
 60
 We conclude that the good faith instruction given by the district court covers the theory of "puffing" advanced by the appellants. Representations cease to be "puffing" when good faith is lacking. See, e.g., United States v. Shelton, 669 F.2d 446, 465 (7th Cir.), cert. denied, 456 U.S. 934 (1982) (in mail fraud case, "puffing" was recognized as a defense theory with basis in law, but the district court's failure to give a "puffing" instruction was not error because the court did instruct the jury on the defense of good faith).
 
 VI Cumulative Error
 
 61
 Although the district court's errors, separately analyzed, were harmless, we must also determine whether "their cumulative effect may nevertheless be so prejudicial to the appellants that reversal is warranted." United States v. Wallace, 848 F.2d 1464, 1475 (9th Cir.1988).
 
 
 62
 We conclude reversal is not required. The case against the appellants turned on proving the existence of a scheme to defraud and the appellants' specific intent to deceive or defraud. Two of the errors we found harmless, namely the admission of evidence of Fern Wolfe's investment motives and the restriction of the cross-examination of Edward Wilson regarding his investment experience, however, were only of tangential importance in establishing the scheme to defraud and the appellants' specific intent to defraud.
 
 
 63
 The other errors, which did relate to central issues in the case, likewise do not require reversal. The exclusion of evidence regarding the identity of the investor with respect to whom Thomas Newell had used the mails was relevant to the issue of ensuring that the jury did not convict the appellants for crimes not charged. The exclusion of evidence regarding Crandall's insurance coverage, however, bore on Crandall's defense of lack of specific intent to deceive. Since these isolated errors do not relate to the same central issue, their cumulative effect is negligible or non-existent. Reversal is not required.
 
 
 64
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Smiths argue that the E & W report is unreliable because it only covers a fifteen-month period, instead of the whole life of the Crandall organization. The Smiths rely on Davis & Cox v. Summa Corp., 751 F.2d 1507, 1516 (9th Cir.1985), where this court held that a summary that summarized only documents dealing with one issue were inadmissible under Rule 1006. The summaries here were reliable for purposes of Rule 803(6). There is no real claim that the E & W report is inaccurate as to the time period it encompassed, or that it selectively omitted information within that time period, as in Summa. We refuse to extend Summa to force the Government to provide information for the whole life of Crandall. We do not see why the Government cannot argue to the jury, on the basis of an accurate report covering fifteen months of activity, that the appellants were engaging in fraudulent activities. The appellants were also free to argue, as they did, that the report did not provide a basis for the jury to believe the Government