T.C. Memo. 1999-142


UNITED STATES TAX COURT


GREGORY H. AND ELIZABETH A. PRICE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18727-96.                Filed April 29, 1999.


<u>Henry W. Tom</u> and <u>Rick Kilfoy</u>, for petitioners.

<u>Richard A. Rappazzo</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


SWIFT, <u>Judge</u>:  Respondent determined deficiencies, additions
to tax, and penalties with regard to petitioners' 1989, 1990, and
1991 Federal income tax liabilities as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Accuracy-Related Penalty Sec. 6662(a) | Fraud Penalty Sec. 6663 |
|------|-----------|-------------------------------|--------------------------------------|------------------------|
| 1989 | $46,994 | $6,689 | -- | $35,246 |
| 1990 | 32,846 | 1,494 | -- | 24,635 |
| 1991 | 34,974 | 8,834 | $6,995 | -- |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All references to petitioner in the singular are to Gregory H. Price.

After concession of some issues, the primary issues for decision are the amount of income that should be charged to petitioner with respect to bank deposits, whether funds received from landlords for improvements to leased property constitute taxable income, and whether petitioner is liable for fraud penalties, additions to tax for late filing of income tax returns, and accuracy-related penalty.

For convenience, with respect to each of respondent's contested adjustments to petitioners' income and expenses, we combine our findings of fact and opinion.

FINDINGS OF FACT AND OPINION

Some of the facts have been stipulated and are so found.

When the petition was filed, petitioners resided in Glendale, Arizona.

Income with Respect to Bank Deposits

During 1985 through 1991, in Phoenix, Arizona, petitioner, either in equal partnership with Michael Talerico (the partnership) or alone, owned and operated seven movie video rental stores (hereinafter sometimes referred to as the Store or the Stores). The partnership and petitioner also sold some of the Stores. The schedule below indicates for each Store the owner of the Store, the month or year the Store was purchased or opened, and the month the Store was sold:

| Name of Store | Owner | Month/Year Purchased or Opened | Month Sold |
| --- | --- | --- | --- |
| Store 1 | Petitioner | Mid-1980's | Mar. 1987 |
| Store 2 | Petitioner | July 1988 | Feb. 1989 |
| Store 3 | Partnership | Nov. 1988 | Feb. 1989 |
| Store 4 | Partnership | Feb. 1989 | -- |
| Store 5 | Partnership | June 1989 | May 1991 |
| Store 6 | Petitioner | Feb. 1990 | -- |
| Store 7 | Partnership | 1991 | -- |

Petitioner was responsible for finances and managed funds of the partnership and of the Stores. Payments for rental of the movie videos (videos) were made by customers with cash, checks, and credit cards.

Inadequate books and records were maintained with regard to income and expenses of the partnership and of the Stores. Some entries were made in what petitioner refers to as general ledgers reflecting funds received from rental of videos. These so-called

general ledgers, however, were retained by the partnership and by petitioner for only a short period of time and were not available at the trial.

Petitioner maintained what he refers to as monthly summary records with respect to funds received from rental of videos. The summary records also were not available at the trial.

There was maintained for each Store a separate bank account at Valley National Bank. Funds received from rental of videos were deposited every few days into the bank accounts maintained for the Stores.

Most of the funds deposited in the bank accounts represented cash received by the Stores from the rental of videos. Funds deposited into the bank accounts also represented checks received by the Stores from the rental of videos and funds received by the Stores from credit card companies for video rentals which had been paid by customers with credit cards.

Stores 1, 2, and 3 were sold either in 1987 or in the beginning of 1989, and there is no issue between the parties as to the income relating to Stores 1, 2, and 3.

For 1989 and 1990, the partnership timely filed partnership Federal income tax returns and reported gross receipts and, after expenses, ordinary losses relating to Stores 4 and 5 as follows:

| Partnership | Year | |
| --- | --- | --- |
| | 1989 | 1990 |
| Gross receipts | $138,756 | $282,168 |
| Ordinary losses | (104,347) | (169,491) |

Petitioners untimely filed their 1989, 1990, and 1991 joint Federal income tax returns, to which returns petitioners attached Schedule E, Supplemental Income and Loss, relating to petitioner's interest in the partnership that owned and operated Stores 4, 5, and 7, and reflecting petitioner's one-half interest in the partnership ordinary losses as claimed on the partnership returns.

On petitioners' 1990 and 1991 joint Federal income tax returns, petitioners attached Schedule C, Profit or Loss From Business, relating to Store 6 that petitioner owned individually and reporting gross income relating to Store 6 of $47,029 for 1990 and $281,740 for 1991.

On audit, using the bank deposits method of proof, respondent treated the funds that were deposited into the bank accounts of the Stores -- the source of which respondent regarded as unexplained -- as taxable income to the partnership or to petitioners. Respondent also treated certain funds received for leasehold improvements (discussed below) as specific items of taxable income, and respondent treated certain other funds that were deposited into the bank accounts maintained for the Stores as nontaxable deposits.

For 1989 and 1990,[1] total unexplained deposits, as
determined by respondent, made into the bank accounts the
partnership maintained for Stores 4 and 5 consist of the
following amounts:

Respondent's Determination of
Partnership Unexplained Bank Deposits

| 1989 | 1990 | 1991 |
|------|------|------|
| $146,609 | $266,352 | 0 |

For 1990, unexplained deposits, as determined by respondent,
made into the bank account petitioner maintained for Store 6
consist of $117,514.

Where a taxpayer fails to maintain adequate books and
records relating to taxable income, respondent may reconstruct a
taxpayer's income by any reasonable method.  See sec. 446(b);
Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir.
1982), affg. per curiam an Order of this Court; Parks v.
Commissioner, 94 T.C. 654, 658 (1990); United Dressed Beef Co. v.
Commissioner, 23 T.C. 879, 885 (1955).

The bank deposits method for computing income is approved by
the courts.  See United States v. Soulard, 730 F.2d 1292, 1296

---

[1]    For 1991, total deposits made into the partnership Store 4
and Store 5 bank accounts were consistent with the total funds
from video rentals reported on the partnership's 1991 information
Federal income tax return.  Accordingly, in his bank deposits
analysis for the partnership for 1991, respondent made no
adjustments for unexplained bank deposits.

(9th Cir. 1984); <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Further, for the years in issue, where respondent uses the bank deposits method to reconstruct a taxpayer's income, respondent's determination has a presumption of correctness, and the taxpayer has the burden of proving that the deposits are not attributable to taxable income. See Rule 142(a); <u>Ruark v. Commissioner</u>, 449 F.2d 311, 312 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-48; <u>Mills v. Commissioner</u>, 399 F.2d 744, 749 (4th Cir. 1968), affg. T.C. Memo. 1967-67; <u>Doll v. Glenn</u>, 231 F.2d 186, 188 (6th Cir. 1956); <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 76-77 (1986).

Petitioners contend that the funds deposited into the partnership's and into petitioners' bank accounts that respondent treats as unexplained bank deposits and therefore as additional taxable income (for the partnership -- $146,609 and $266,352 for 1989 and 1990, respectively; for petitioners -- $117,514 for 1990) are largely attributable to sales of videos that petitioner owned personally, in which videos petitioner had a cost or tax basis in excess of the amount for which the videos were sold, and petitioners therefore contend that the bank deposits in question do not constitute taxable income.

Respondent argues that petitioner has not established the nontaxable source of the bank deposits in question.

Inadequate books and records were maintained relating to funds received by the Stores for the rental of videos and relating to the partnership's and to petitioners' income from the Stores. Most of the records that allegedly were maintained were retained only for a short period of time and were not introduced into evidence. No records appear to have been maintained relating to checks and credit card payments received for rental of the videos.

Petitioners presented no receipts, invoices, photographs, or other credible evidence to establish and verify petitioner's ownership and sale of, and tax basis in, personal videos that would explain the nature and source of the bank deposits in question.

Petitioners have failed to establish the nontaxable nature of the bank deposits treated by respondent as unexplained and as taxable income. We sustain respondent's adjustments to the partnership's and to petitioner's income based on the unexplained bank deposits.

Reimbursements for Leasehold Improvements

On March 20, 1989, the partnership leased from MC-Peoria Limited Partnership (Peoria) a portion of a building for Store 5. Under terms of the lease, the partnership was obligated to make certain capital improvements to the building, and Peoria was

obligated to transfer to the partnership up to $100,000 to reimburse the partnership for costs of the improvements. During 1989, the partnership received from Peoria $99,946 to make the improvements to Store 5.

In November of 1989, petitioner leased for a period of 10 years from the College Park Partnership (College Park) a portion of a building for Store 6. Under terms of the lease, petitioner was obligated to make certain capital improvements to the building, and College Park was obligated to transfer to petitioner up to $70,000 to reimburse petitioner for costs of the improvements. During 1989, petitioner received $56,921 from College Park to make the improvements to Store 6.

In 1989, Store 5 and in early 1990 Store 6 were opened and conducted business, and it appears from the evidence that the required improvements to the buildings were made and that the above funds were received from Peoria and from College Park by the partnership and by petitioner as reimbursement for costs of the improvements.

During 1990, petitioner received $8,465 from College Park to make improvements to Store 6.

On the partnership's and on petitioners' 1989 income tax returns, the $99,946 the partnership received from Peoria in 1989 to make improvements to Store 5 was not reflected as income of the partnership. Also, on petitioners' joint Federal income tax

return for 1989, the $56,921 that petitioner received from College Park in 1989 to make improvements to Store 6 was not reflected as taxable income. Similarly, on petitioners' joint Federal income tax return for 1990, the $8,465 that petitioner received from College Park in 1990 to make improvements to Store 6 was not reflected as taxable income.

On audit, respondent treated the $99,946 received by the partnership from Peoria in 1989, $39,788 of the $56,921[2] received by petitioner from College Park in 1989, and the $8,465 received by petitioner from College Park in 1990 as specific items of unreported taxable income.

Under section 61, gross income includes all income from whatever source derived. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Respondent relies on this general proposition in treating as taxable income the funds the partnership and petitioner received in 1989 and 1990 from Peoria and College Park.

Generally, however, gross income does not include funds received by a taxpayer in reimbursement for expenses paid on behalf of another. See Gray v. Commissioner, 10 T.C. 590, 596-

---

[2]     Respondent treated $17,133 of the funds received by petitioner from College Park in 1989 as a nontaxable reimbursement for leasehold improvements.

597 (1948); Rev. Rul. 67-407, 1967-2 C.B. 59; 1 Mertens, Law of Federal Income Taxation, sec. 5.06, at 16 (1999 rev.).

The evidence is sufficiently clear that the funds received in 1989 and 1990 relating to leasehold improvements to buildings in which Stores 5 and 6 operated under short-term leases were received by the partnership and by petitioner in reimbursement for capital expenditures made to the buildings owned by the landlords. As such, these funds do not constitute taxable income to the partnership or to petitioner. See Suwalsky, 47-5th T.M., Real Estate Leases and Improvements, A-22 to A-26 (July 6, 1998).[3]

Depreciation Recapture Income

In June of 1989, the partnership opened Store 5. Throughout the years in issue, the partnership purchased videos that Store 5 owned and rented to customers.

On May 1, 1991, for a stated sales price of $200,000, the partnership sold Store 5 and the videos associated with Store 5. The partnership's total cost basis in the assets of Store 5 equaled $288,239. The sale took the form of an installment sale

---

[3]    Generally, under sec. 110, for leases entered into after Aug. 5, 1997, funds received by tenants in reimbursement from landlords for improvements to certain buildings leased under short-term leases are treated as nontaxable income to the tenants.

under which the purchaser paid the partnership a cash downpayment of $12,500 and gave the partnership a $187,500 promissory note.

On its 1989, 1990, and 1991 partnership Federal income tax returns, the partnership claimed accelerated depreciation with respect to the partnership's tax basis in Store 5.

On its 1991 partnership Federal income tax return, the partnership did not reflect the sale of Store 5. Rather, the sale of Store 5 was reflected only on petitioners' 1991 joint Federal income tax return as an installment sale with respect to which a capital gain for 1991 of $298 was reported.

On audit, respondent determined that the partnership's total $170,267 gain on the sale of Store 5 and the associated videos[4] was attributable to depreciation recapture and was taxable to the partnership for 1991 as ordinary income under section 453(i).

Under the installment sale provisions of section 453(i), it is provided that on an installment sale, all income related thereto that would be treated as ordinary recapture income under sections 1245 or 1250 if received in the year of the sale, must be treated as ordinary income as if received in the year of the sale. See Murry v. Commissioner, T.C. Memo. 1993-471; 2 Mertens,

---

[4]    Respondent apparently computed the partnership's $170,267 gain on the 1991 sale of Store 5 as follows:  $200,000 sales price for Store 5 less partnership's depreciated tax basis in Store 5 and in the associated videos of $29,733 equals $170,267.

Law of Federal Income Taxation, sec. 15.05, at 21, 15.22, at 57 (1997 rev.).

Although petitioners object to this adjustment to the partnership's income for 1991, petitioners provide no basis for their objection.  We sustain respondent's adjustment.

## Rental Income

During the years in issue, petitioners owned a number of rental properties on which they received rental income.

Petitioners reported on their 1990 joint Federal income tax return $29,550 in rental income relating to these properties.

Respondent determined that in 1990 petitioners received $31,441 of rental income from these rental properties and that petitioners failed to report $1,891 of such rental income.

Under section 61(a)(5), funds received from rental of property are included in a taxpayer's income.

Although petitioners dispute respondent's adjustment, petitioners provided no testimony or evidence to disprove the adjustment.  We sustain this adjustment.

## Depreciation of Videos

As indicated, during the years in issue, videos were purchased by the partnership and by petitioner for rental to customers.

On the partnership's and on petitioners' Federal income tax returns for the years in issue, the costs of some of the videos purchased for rental to customers were expensed currently. In the partnership's and on petitioners' income tax returns, depreciation expense deductions relating to the balance of the videos rented to customers were claimed using the Modified Accelerated Cost Recovery System, a 3-year life, and the half-year convention.

On audit, respondent disallowed the current expenses claimed for the cost of videos rented to customers. Respondent also determined that the proper method for computing depreciation on the videos was the straight-line method using a 2-year life and a $5 per-tape-salvage value (straight-line method). For some years, respondent's adjustments to depreciation resulted in a decrease in the depreciation claimed, and in other years, respondent's adjustments to depreciation resulted in an increase in the depreciation to be allowed.

The schedule below sets forth respondent's recomputation of the partnership's and of petitioners' allowable depreciation relating to videos rented to customers:

| Respondent's Recomputation of Depreciation | 1989 | 1990 | 1991 |
|---|---|---|---|
| **Partnership** | | | |
| Depreciation claimed on return | $55,452 | $145,057 | $118,404 |
| Videos expensed on return | 44,264 | -- | -- |
| Recomputed depreciation | (86,765) | (181,015) | (159,833) |
| Total decrease/(increase) | 12,951 | (35,958) | (41,429) |
| petitioner's one-half share | 6,475 | (17,979) | (20,715) |
| | | | |
| **Petitioners** | | | |
| Depreciation claimed on return | | 56,074 | 95,293 |
| Videos expensed on return | | | 73,991 |
| Recomputed depreciation | | (55,715) | (121,075) |
| Total decrease | | $ 359 | $ 48,209 |

A reasonable depreciation deduction is allowed for the exhaustion and wear and tear of property used in a trade or business. See sec. 167(a). Under sections 167(c) and 168(f), movie videos are to be depreciated for Federal income tax purposes using a straight-line method. See Rev. Rul. 89-62, 1989-1 C.B. 78.

Petitioner argues that for 1989 and 1991, respectively, of the above adjustments made by respondent, respondent incorrectly classified $44,264 for the partnership and $73,991 for petitioners as costs of videos, as not currently deductible, and as subject to straight-line depreciation. Petitioners claim that such funds related to the cost of supplies for the Stores and were properly expensed by the partnership and by petitioners.

No evidence supports petitioners' contention. We sustain respondent's adjustments to current expenses and to depreciation claimed relating to videos rented to customers.

Repair and Maintenance Expenses

On their 1989, 1990, and 1991 joint Federal income tax returns, petitioners claimed current business expenses of $1,598, $4,333, and $2,014, respectively, relating to repair and maintenance work on petitioners' rental properties.  On audit, respondent disallowed $893, $3,486, and $1,020, for 1989, 1990, and 1991, respectively, of the claimed repair and maintenance expenses.

Petitioners presented no evidence to dispute respondent's adjustments for repair expenses.  We sustain respondent's adjustments for each year.  See Rule 142(a).

Summary of Adjustments

Based on the above findings and conclusions relating to disputed issues, on petitioners' concession of adjustments, and certain mechanical adjustments, we set forth below, in schedule format, the total adjustments that are to be made to petitioners' reported income, expenses, and taxable income:

| Partnership Adjustments - Contested by Petitioners (Stores 4, 5, and 7): | 1989 | 1990 | 1991 |
|---|---|---|---|
| Unexplained bank deposits | $146,609 | $266,352 | |
| Depreciation recapture on Store 5 | | | $170,267 |
| Depreciation of videos | 12,951 | (35,958) | (41,429) |
| | | | |
| Total adjustments to partnership income | $159,560 | $230,394 | $128,838 |
| Petitioner's one-half interest in total partnership adjustments | $ 79,780 | $115,197 | $ 64,419 |

| Individual Adjustments: | | | |
|---|---|---|---|
| Contested by Petitioners: | | | |
| Unexplained bank deposits | | $117,514 | |
| Rental income | | 1,891 | |
| Depreciation of videos | | 359 | $ 48,209 |
| Repair and maintenance expenses | $    893 | 3,486 | 1,020 |
| | | | |
| Conceded by Petitioners or Mechanical Adjustments: | | | |
| State tax refund | | 240 | 443 |
| Rental interest paid | 2,453 | | |
| Rental depreciation | 3,540 | 3,540 | 3,540 |
| Capital gains/losses | | | (298) |
| Self-employment tax deduction | | (3,924) | (1,076) |
| Itemized deductions | (3,964) | (4,454) | 1,662 |
| Exemption adjustment | | | 387 |
| Corrected individual adjustments before partnership adjustments | $  2,922 | $118,652 | $ 53,887 |

| Total combined individual adjustments to taxable income and to petitioner's one-half interest in total partnership income adjustments | $ 82,702 | $233,849 | $118,306 |
|---|---|---|---|

## Fraud (1989 and 1990) Penalties, Accuracy- Related Penalty, and Additions to Tax

For 1989, 1990, and 1991, petitioners untimely filed their joint Federal income tax returns.

Petitioners reported on their 1989, 1990, and 1991 joint Federal income tax returns the following taxable income:

| | Year | | |
|---|---|---|---|
| | 1989 | 1990 | 1991 |
| Reported taxable income | -0- | -0- | $22,967 |

For 1989, respondent determined that petitioner is liable for fraud and that the fraud is attributable to the taxable income relating to the unexplained bank deposits and the reimbursements for leasehold improvements. For 1990, respondent determined that petitioner is liable for fraud and that the fraud is attributable to the taxable income relating to the unexplained bank deposits, the reimbursements for leasehold improvements, and the $359 of claimed depreciation expense.

For the years in issue, under section 6663(a), a penalty of 75 percent applies to the portion of an understatement of tax that is attributable to fraud. To establish fraud, respondent is required to prove that the understatement is due to fraudulent intent. See sec. 7454(a); Rule 142(b); DiLeo v. Commissioner, 959 F.2d 16 (2d Cir. 1992), affg. 96 T.C. 858, 873 (1991). Respondent has the burden of proving fraud by clear and convincing evidence. See sec. 7454(a); Rule 142(b); Bagby v. Commissioner, 102 T.C. 596, 607 (1994).

Where allegations of fraud are intertwined with unreported and indirectly reconstructed income, respondent is required to establish a likely taxable source for alleged unreported income or to disprove nontaxable sources alleged by the taxpayer. See DiLeo v. Commissioner, 96 T.C. at 873; Parks v. Commissioner, 94 T.C. 654, 661 (1990).

Indicia of fraud include: (1) Understatements of income; (2) inadequate books and records; (3) lack of cooperation with tax authorities; and (4) implausible or inconsistent explanations of behavior. See Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Clayton v. Commissioner, 102 T.C. 632, 647 (1994); Petzoldt v. Commissioner, 92 T.C. 661, 699-700 (1989); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988).

With regard to the fraud alleged by respondent for 1989 and 1990, the evidence establishes that petitioner failed to maintain adequate books and records with regard to income and expenses of the Stores, that petitioner received significant taxable income not reported on petitioners' joint Federal income tax returns, and that significant understatements of tax were made on petitioners' Federal income tax returns.

We conclude that for 1989 and 1990 respondent has established by clear and convincing evidence that petitioner fraudulently intended to evade his correct Federal income tax liabilities.

For 1989 and 1990, we conclude that the increases to petitioner's taxable income that we have sustained herein and that relate to unexplained bank deposits are attributable to fraud. For purposes of the fraud penalties, none of the other adjustments that we sustain herein are attributable to fraud.

With regard to the section 6662(a) 20-percent accuracy-related penalty that respondent determined for 1991, such penalty applies

where and to the extent that understatements of tax are attributable to negligence. Respondent asserts that this penalty applies to the adjustments for depreciation recapture and depreciation. Taxpayers are required to maintain adequate records and failure to do so may constitute negligence and a disregard of rules or regulations. See sec. 6001; see also Nehus v. Commissioner, T.C. Memo. 1994-631, affd. without published opinion 108 F.3d 338 (9th Cir. 1997); Schroeder v. Commissioner, 40 T.C. 30, 34 (1963); Bard v. Commissioner, T.C. Memo. 1990-431. Taxpayers bear the burden of proof with regard to this issue. See Rule 142(a).

For 1991, the failure of petitioner to maintain adequate records constitutes negligence. We sustain respondent's determination of the accuracy-related penalty with respect to the adjustments for depreciation recapture and depreciation.

For the years in issue, section 6651(a)(1) provides for an addition to tax for failure to timely file Federal income tax returns. The addition to tax equals 5 percent of the amount required to be shown as tax on the return for every month the return has not been filed, but not exceeding 25 percent. This addition to tax will not be imposed if it is established that the

late filing was due to reasonable cause and not due to willful neglect.  We sustain respondent's determination of the additions to tax for failure to timely file.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.