60 F.3d 835
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Tom Minh TRINH, also known as Tu Nguyen, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Phu Chi TRUONG, Defendant-Appellant.
 Nos. 94-10047, 94-10192.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 2, 1995.*
Decided July 6, 1995.
 
 Before: PREGERSON, KOZINSKI, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Tom Minh Trinh and Phu Chi Truong were convicted of conspiracy to possess and possession of methamphetamine with intent to distribute in violation of 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(A), and 846. Trinh was sentenced to a 252 month prison term; Truong 25 years. Both appeal their convictions; Trinh also challenges the district court's determination of his sentence. We have jurisdiction under 28 U.S.C. 1291. We affirm.
 
 DISCUSSION
 
 3
 I. The AUSA's Question Did Not Constitute Vouching
 
 
 4
 We review the district court's denial of a mistrial motion for abuse of discretion. United States v. Homick, 964 F.2d 899, 906 (9th Cir.1992); United States v. Marsh, 894 F.2d 1035, 1040 (9th Cir.1989), cert. denied, 493 U.S. 1083 (1990).[1]
 
 
 5
 One of the government's witnesses was Sergeant Steven Cusumano, an officer who participated in the surveillance and arrest of the defendants. On cross-examination, Truong's attorney asked Cusumano whether he had met with the prosecution before trial to prepare his testimony. On redirect, the prosecutor asked about the specifics of those meetings and concluded with the following questions:
 
 
 6
 Q. Did I ever tell you to lie or shade the truth in this case?
 
 
 7
 A. No, never.
 
 
 8
 Q. You're telling the truth in this case?
 
 
 9
 A. Yes, sir.
 
 
 10
 As the witness was answering the final question, the district court admonished the prosecutor: "Mr. Kawahara, you can't ask the witness that question." The court also immediately gave a cautionary instruction to the jury, telling them that it was up to them to judge the credibility of the witnesses, and that no one, including the government, stands behind the credibility of any witness. Later, as it became clear that the witness had indeed answered the question, the court again cautioned the jury, admonishing them to disregard the answer, if they heard it, and reminding them that they were the sole judges of credibility.
 
 
 11
 Truong contends that the question constituted "vouching," i.e. improper bolstering of the witness's credibility by the government. See United States v. Simtob, 901 F.2d 799, 805 (9th Cir.1990) ("The government may not vouch for the credibility of its witnesses, either by putting its own prestige behind the witness or by indicating that extrinsic information not presented in court supports the witness' testimony.").
 
 
 12
 We disagree. The question did not constitute vouching. The question "does not imply a guaranty of Gibson's truthfulness, refer to extra-record facts, or reflect a personal opinion." United States v. Necoechea, 986 F.2d 1273, 1278 (9th Cir.1993) (holding that the prosecutor's question whether it was part of witness's plea agreement that she "testif[y] truthfully and cooperat[e]" was not vouching). Nor was the question inopportune since Truong had challenged Cusumano's credibility during cross-examination.[2] Id. at 1279.
 
 
 13
 Even if the question were vouching, the district court's curative instructions eliminated any potential prejudice. See Simtob, 901 F.2d at 806 (stating that "[p]rompt and effective action by the trial court may neutralize the damage by admonition to counsel or by curative instructions to the jury"). Here, the district court immediately admonished the AUSA for asking the question and gave two curative instructions to the jury. These prompt and specific measures undid whatever harm the prosecutor's question might have caused. Compare United States v. Kerr, 981 F.2d 1050, 1053-54 (9th Cir.1992) (holding that where a prosecutor's vouching is serious, prompt curative action is required) with United States v. Shaw, 829 F.2d 714, 718 (9th Cir.1987) (holding that in cases of mild vouching a general instruction is sufficient to cure the error), cert. denied, 485 U.S. 1022 (1988).
 
 
 14
 It is also worth noting that the "vouched for" witness was not crucial to the government's case. He did not provide any significant information that was not supplied by the other government witnesses. See Kerr, 981 F.2d at 1054 (holding that in vouching cases the Court must "examine the closeness of the case"); Simtob, 901 F.2d at 806 (noting that vouching in a close case "could well have had critical influence" on the jury). Cf. United States v. Marsh, 894 F.2d 1035, 1040 (9th Cir.1989) ("[W]e will not reverse a defendant's conviction if substantial, independent and credible evidence of the defendant's guilt overwhelms whatever incriminating aspects inadmissable statements may have had in isolation.").
 
 
 15
 II. The AUSA's Argument Was Not a Comment on the Defendants' Failure to Testify
 
 
 16
 Appeals alleging impermissible commentary by the government as to a defendant's failure to testify are subject to harmless error review. United States v. Hasting, 461 U.S. 499, 509 (1983). The district court's denial of a mistrial motion is reviewed for abuse of discretion. United States v. Homick, 964 F.2d 899, 906 (9th Cir.1992).
 
 
 17
 During closing argument, the AUSA summarized the evidence presented against the defendants and then posed the following question to the jury: "In other words, is there any innocent explanation for what defendants did, or how they traveled on this particular trip to Hawaii, back on April 14, 1993?" Truong asserts that this question constitutes an indirect comment on the defendants' assertion of their Fifth Amendment right not to testify.
 
 
 18
 The district court did not abuse its discretion by not declaring a mistrial.
 
 
 19
 The test to judge impermissible comment on a defendant's assertion of his Fifth Amendment right not to testify is whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify.
 
 
 20
 United States v. Soulard, 730 F.2d 1292, 1306 (9th Cir.1984). The prosecutor's statement here does not meet this standard; rather it seems to be merely a rhetorical question that is reasonably inferable from the evidence presented.
 
 
 21
 Further, contrary to Truong's contention that "no person other than the defendant could have offered an 'innocent explanation' for his conduct," numerous other sources could have supplied such an explanation. Thus, while the defendant does not have the burden of proving his innocence, it is not improper for the prosecution to point out the lack of exculpatory evidence presented. Id. Since the AUSA's question was "not phrased to call attention to the defendant[s'] own failure to testify," it was not an improper comment. Id. See also United States v. Bright, 630 F.2d 804, 825 (5th Cir.1980).
 
 
 22
 III. The Evidence Was Sufficient to Sustain Trinh's Convictions
 
 
 23
 When the sufficiency of evidence is challenged, this Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 A. The Conspiracy Count
 
 24
 As Trinh correctly notes, "there is no direct proof of an agreement between appellant Trinh and co-defendant Truong to possess and distribute crystal methamphetamine." He suggests that the fact that he was carrying the Samsonite suitcase that was later found to contain over 750 grams of methamphetamine "establishes only common courtesy between persons travelling together relative to fair distribution of items to be carried--not that he was a knowing participant in the particular alleged conspiracy."
 
 
 25
 However, it is possible to prove the existence of a conspiracy entirely by circumstantial evidence. United States v. Buena-Lopez, 987 F.2d 657, 659 (9th Cir.1993) ("[S]eemingly innocent acts, where viewed in the proper context, may support an inference of guilt."); United States v. Castro, 972 F.2d 1107, 1111 (9th Cir.1992) ("The government does not have to present direct evidence. Circumstantial evidence and the inferences drawn from that evidence will sustain a conspiracy conviction."), cert. denied, 113 S.Ct. 1350 (1993); United States v. Calabrese, 825 F.2d 1342, 1348 (9th Cir.1987) ("A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions.").
 
 
 26
 Viewing the evidence in the light most favorable to the government and drawing reasonable inferences therefrom, the evidence, though circumstantial, is sufficient to support the jury's verdict. Trinh and Truong were travelling together, under false names, with consecutively numbered tickets purchased from the same travel agency. The fact that the name on the Samsonite suitcase matched Trinh's alias undermines his claim that he was carrying the bag only out of "common courtesy." Trinh conducted visible counter-surveillance on the way to the baggage claim area and the defendants seemed very cautious and nervous when questioned by Officer Tano. "The coordinated actions of the codefendants are strong circumstantial evidence of an agreement. The likelihood that these actions were not driven by an agreement is extremely remote." United States v. Hernandez, 876 F.2d 774, 778 (9th Cir.), cert. denied, 493 U.S. 863 (1989).
 
 B. The Possession Count
 
 27
 Trinh also contends that his conviction on the possession charge should be reversed because there was insufficient evidence to show that he constructively possessed the methamphetamine in the Samsonite suitcase. Specifically, he asserts that because he did not have the key to the suitcase he did not have sufficient control over its contents to be liable under a constructive possession theory. Additionally, Trinh argues that there is no evidence that he knew the suitcase contained methamphetamine.
 
 
 28
 Trinh's argument assumes his conviction depended on a constructive possession theory. There is, however, sufficient evidence of actual possession to uphold his conviction. Trinh points to his not having the suitcase key, but ignores the rest of the evidence that suggests the suitcase was his: he had retrieved the suitcase from the baggage carousel, the name tag on it bore his assumed name, and the name and number on the baggage claim tag matched the name and number on Trinh's airline ticket. Additionally, when Officer Tano asked his name, Trinh showed her the name on the luggage tag, and responded "Tu Nguyen." When viewed in the government's favor, this evidence is sufficient to support the jury's finding that Trinh was knowingly in possession of the methamphetamine in the Samsonite suitcase.
 
 
 29
 IV. The "Stacking" of Inferences Does not Violate Due Process
 
 
 30
 A due process challenge involves a question of law that is reviewable de novo. United States v. Warren, 25 F.3d 890, 897 (9th Cir.1994).
 
 
 31
 Because Trinh did not raise his due process argument at the district court level, this Court will not consider it unless: (1) its review is necessary to avoid a miscarriage of justice or preserve the integrity of the judicial process; (2) the applicable law changed while the appeal was pending; or (3) the issue is purely a question of law. United States v. Kimball, 896 F.2d 1218, 1219 (9th Cir.1990), vacated in part on other grounds, 925 F.2d 359 (9th Cir.1991). This issue is purely one of law, so we may reach the merits of the claim.
 
 
 32
 Trinh attacks the "intent to distribute" element of his convictions, arguing that it violates due process to "stack" the "presumption" of intent to distribute on the "presumption" of knowing possession created by the constructive possession doctrine.[3] According to Trinh, there is no "rational connection" or nexus between the amount constructively possessed and the presumption of intent to distribute. Obviously, this argument depends on his earlier constructive possession argument; since we have rejected that argument, his due process claim also fails. See United States v. Sanchez-Lopez, 879 F.2d 541, 555 (9th Cir.1989) (holding that the "price, quantity, and quality" of the drugs was "highly relevant" to the defendants' knowledge and intent); United States v. Savinovich, 845 F.2d 834 838 (9th Cir.) (holding that intent may be inferred from the "purity, price, and quantity of the drug possessed"), cert. denied, 488 U.S. 943 (1988).
 
 
 33
 Even if we were to conclude that Trinh's possession conviction was based on a constructive possession theory, there is no compelling reason to accept his argument. His claim that this so-called "double presumption" would undermine an accused's presumption of innocence is unsupported by a citation to relevant caselaw. Further, drawing such a distinction between actual and constructive possession cases is nonsensical--it would allow one conspirator to be convicted of a conspiracy to distribute while his equally culpable co-conspirator would be acquitted solely because he happened to be in constructive, rather than actual, possession of illegal narcotics. Thus, although both conspirators had the same objective, one could be relieved of responsibility because of a fortuitous logistical choice--who would carry the drugs. See United States v. Thomas, 676 F.2d 531, 535 (11th Cir.1982) (upholding an inference of intent to distribute even though the defendant was not in actual possession of the drugs).
 
 
 34
 V. The District Court Properly Combined the Amount of Drugs Found in Each Suitcase
 
 
 35
 The district court's application of the Sentencing Guidelines is reviewed de novo, while the factual findings made at the sentencing phase are subject to clear error review. United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir.1994). The determination of the quantity of narcotics involved in an offense is a factual finding. United States v. Vaandering, 50 F.3d 696, 704 (9th Cir.1995). The government must prove the amount of drugs attributable to a member of a conspiracy by a preponderance of the evidence. United States v. Restrepo, 946 F.2d 654, 656-57 (9th Cir.1991) (en banc), cert. denied, 503 U.S. 961 (1992).
 
 
 36
 Trinh argues that the district court erred by using the total amount of drugs found in both suitcases when calculating his sentence. Returning to the reasoning of his constructive possession argument, he contends that the amount of methamphetamine in Truong's suitcase was not reasonably foreseeable by him and was not within the scope of his agreement. See United States v. Petty, 992 F.2d 887, 889-90 (9th Cir.1993).
 
 
 37
 Under U.S.S.G. Sec. 1B1.3(a)(2), a defendant involved in joint criminal activity is accountable for the crimes of his co-conspirators that are "part of the same course of conduct or common scheme or plan." Applying this provision, the district court made an express finding that the aggregate quantity of drugs was attributable to both defendants:
 
 
 38
 Because both defendants carried the ice in the two suitcases in furtherance of the conspiracy of which they were both convicted, and the testimony showed concerted action between the two defendants, each will be held accountable for the ice in both suitcases, the total of 1,486.4 grams, and therefore, his base level remains at 36.
 
 
 39
 Nothing in the record suggests that this finding was clearly erroneous.
 
 
 40
 VI. The District Court Did Not Err by Refusing to Grant Trinh a Two-Point Reduction in His Base Offense Level for Being a Minor Participant in the Offense
 
 
 41
 Whether a defendant is a minor or minimal participant in an offense is a factual determination subject to clearly erroneous standard of review. United States v. Gillock, 886 F.2d 220, 222 (9th Cir.1989).
 
 
 42
 Trinh argues that he was only a "minor participant" in the offense, and should have been granted a two-point reduction in his base offense level. He again emphasizes that, at the time of the encounter with the police, Truong held the key to the Samsonite suitcase.
 
 
 43
 To determine whether a defendant played a minor role in the criminal activity, the defendant's actions must be compared to those of his co-conspirators. United States v. Petti, 973 F.2d 1441, 1447 (9th Cir.1992), cert. denied, 113 S.Ct. 1859 (1993). The district court compared Trinh's and Truong's relative involvement and determined that while Truong may have had "a slightly more significant role .... it can't be said that Mr. Trinh's role was minor because he was carrying half the load. He was integral to the entire conspiracy in the operation." This determination is not clearly erroneous.
 
 CONCLUSION
 
 44
 Therefore, the defendants' convictions and sentences are AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The government erroneously states that the denial of a mistrial motion is subject to the "clearly erroneous" standard. The government cites to United States v. Brutzman, 731 F.2d 1449, 1453 (9th Cir.1984), to support its claim; however, Brutzman appears to have misread the cases on which it relied and has not been followed in later cases. See United States v. Charmley, 764 F.2d 675, 677 n. 1 (9th Cir.1985)
 
 
 [2]
 Truong's counsel indicated that she cross-examined Cusumano about pre-trial meetings with the prosecutor because in "the book written by Mauet, he said if you don't have very much to say in cross examination, he gave a list of questions to ask, and I asked those questions, because I didn't know what else to ask him." However, the trial court found, and Truong's counsel essentially conceded, that the "natural inference from those questions is that [the witness was] highly coached to tell a particular story."
 
 
 [3]
 We note that while Trinh discusses a "presumption" of intent, our cases generally speak in terms of an "inference" of intent based on the quantity of drugs involved. See United States v. Martinez, 967 F.2d 1343, 1345 (9th Cir.1992); United States v. Ocampo, 937 F.2d 485, 488 (9th Cir.1991); United States v. Valentin, 569 F.2d 1069, 1071 (9th Cir.1978)