# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 22, 2011

No. 10-40118

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JOSE FRANCISCO RIOS,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, DAVIS, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Jose Francisco Rios was convicted of conspiring to transport illegal aliens
and of aiding and abetting the transportation of illegal aliens. The district court
denied a missing witness instruction, which is the sole issue raised on appeal.
We AFFIRM.

## STATEMENT OF FACTS

Jose Francisco Rios and Wilber Mendoza-Cortez were charged with one
count of conspiring to transport illegal aliens and multiple counts of aiding and
abetting the transportation of illegal aliens. Three days prior to trial, Mendoza
appeared in court to offer a guilty plea. He was unwilling, though, to admit he

No. 10-40118

had conspired with Rios.  He stated that he knew Rios's son but had minimal contact with Rios.  Mendoza denied other aspects of the government's factual recitation, including details of his initial detention and questioning.  The district court did not accept Mendoza's guilty plea.

On the morning of trial, Mendoza again sought to plead guilty to conspiring to transport illegal aliens.  Mendoza explained that he had discussed details with his attorney and agreed he was involved in a conspiracy with Rios and others to transport illegal aliens into the United States.  The district court accepted Mendoza's guilty plea. After discussing whether Mendoza would testify during Rios's trial or invoke his Fifth Amendment privilege, Mendoza's counsel indicated that Mendoza did not wish to testify.  When asked by the district court if he wanted to call Mendoza, Rios's counsel stated, "I don't anticipate needing him."

The trial against Rios began that day.  Mendoza did not testify.  There was testimony from law enforcement officers involved in the arrest and from some of the aliens in the vehicle.  This testimony showed that on August 18, 2009, the Kleberg County Sheriff's Department, with the assistance of two federal Customs and Border Patrol agents, stopped a sports utility vehicle being driven along a rural highway south of Kingsville, Texas.  The SUV was traveling 10 miles per hour below the speed limit and appeared to be carrying a heavy load. Rios, the driver of the SUV, had five passengers, all of whom were dirty and sweaty.  Mendoza was crouched in the fetal position on the front floorboard; two people were lying on top of each other on the rear seat; one person was lying on the rear floorboard; and one person was behind the rear seat.

The Customs and Border Patrol agents determined that all of Rios's passengers had entered the country illegally. Accordingly, Rios and Mendoza were arrested.  Rios told officials he did not know the passengers, including Mendoza, but had agreed to give them a ride.  When questioned whether he

2

No. 10-40118

knew the passengers had illegally entered the country, Rios said he was not an immigration officer and therefore did not know their status.

Officials seized two cell phones from Rios's car, one of which was registered to Rios's wife and contained pictures of Mendoza taken prior to the date of the stop. Cell phone records indicated that multiple calls had taken place between Rios's phone and Mendoza's phone.

Four of the aliens testified that at some point in their different journeys to enter the United States from Mexico, they all met and traveled through the south Texas brush with Mendoza as their guide. They had no contact with Rios until he picked them up. Two of the aliens testified that the SUV was waiting for them when they emerged from the brush onto a highway. Another testified that when they arrived at the highway, they waited 15 minutes before the SUV picked them up. The fourth testified that when they arrived at the highway, they flagged down Rios's SUV and asked for a ride. The aliens testified that except for a greeting to Mendoza, Rios did not communicate with them.

After the government had concluded its case and Rios's motion for judgment of acquittal was denied, defense counsel announced it had no witnesses. The district judge briefly questioned Rios about his decision not to testify. The judge then asked for final objections to the charge. Rios's counsel stated that he wanted a "missing witness instruction." He called Mendoza a "500 pound gorilla" in the case. As we will detail later, such an instruction would have told jurors to infer that Mendoza's testimony would have been unfavorable to the government.

The court noted that 30 minutes earlier, defense counsel said he had no objections to the instructions. Counsel said he had changed his mind. The court asked, "What is the missing witness instruction? Do you have it written?" Counsel responded that it was back at his office and offered to state "verbatim"

No. 10-40118

into the record its wording.  The court denied that request and apparently simultaneously denied the instruction.

The court then asked the prosecutor for his view on the instruction.  He objected to it, stating that the defense had known at least since the Friday prior to the Monday trial which witnesses would be called; Rios's counsel also had seen the "debacle" with Mendoza's first attempted guilty plea.  On Monday morning, all parties learned that Mendoza's guilty plea was accepted, and Rios's counsel had indicated he likely would not want Mendoza to testify.  The district court characterized Mendoza's announcement that he would not testify as a statement that "he was going to take the Fifth," and counsel for Rios conceded he had known "all day" Mendoza would not testify.  There was no additional ruling on the instruction; the discussion turned to closing argument matters.

After closing argument, the district court read the instructions to jurors. At one point, the court asked whether it was using the proper jury charge. Counsel for Rios again objected to the "lack of the missing witness instruction." The court's continuing denial was implicit.

The jury found Rios guilty of all counts.  The district court sentenced Rios to concurrent sentences of 27 months of imprisonment.

## DISCUSSION

The only issue before us is whether the failure to given an instruction about a missing witness, namely, co-conspirator Mendoza, was reversible error. Generally, we review challenges to "jury instructions under an abuse of discretion standard, affording the trial court substantial latitude in describing the law to the jurors." *United States v. Santos*, 589 F.3d 759, 764 (5th Cir. 2009) (quotation marks and citation omitted).

As we have discussed, an actual instruction was never proposed. The Fifth Circuit has no pattern jury instruction on this point.  The core of one such instruction proposed in another case was this:

No. 10-40118

> However, in judging the credibility of the witnesses who have testified, and in considering the weight and effect of all evidence that has been produced, the jury may consider the prosecution's failure to call other witnesses or to produce other evidence shown by the evidence in the case to be in existence and available.

*United States v. Olivares*, 19 F.3d 15, 1994 WL 93297, at *1 (5th Cir. 1994) (unpublished).  In addition, it appears from Rios's arguments at trial that the instruction he desired would have said that an unfavorable inference should be drawn by jurors against the government for its failure to call Mendoza.  *See United States v. Davis*, 487 F.2d 112, 126 (5th Cir. 1973).

A district court should not grant a missing witness instruction unless the individual (1) is peculiarly within one party's power to produce, and (2) would provide testimony that will elucidate facts at issue.  *Santos*, 589 F.3d at 764; *United States v. Black*, 497 F.2d 1039, 1042 n.3 (5th Cir. 1974).  Where it appears the testimony would likely have been cumulative, an instruction is not justified.  *United States v. Jennings*, 724 F.2d 436, 446 (5th Cir. 1984).

Rios argues that Mendoza was peculiarly within the government's control because the government had the ability to grant immunity.  Further, Mendoza's testimony allegedly would have explained the nature of Rios and Mendoza's relationship, the circumstances under which Mendoza and the illegal aliens ended up in Rios's vehicle, the nature and scope of any conspiracy, and Rios's knowledge of the aliens' illegal status.

The Fifth Circuit has yet to address whether a witness who relies upon his or her constitutional right not to testify is peculiarly within the government's control.  Every circuit that has considered the question, though, has held that the government's ability to grant immunity does not make a witness who invokes the Fifth Amendment right not to testify peculiarly available to the government.  *See, e.g., United States v. Myerson*, 18 F.3d 153, 158-60 (2d Cir. 1994); *United States v. St. Michael's Credit Union*, 880 F.2d 579, 597-98 (1st Cir.

1989); *United States v. Brutzman*, 731 F.2d 1449, 1453-54 (9th Cir. 1984), *abrogated on other grounds*, *United States v. Trinh*, 60 F.3d 835, 1995 WL 398897 (9th Cir. 1995) (unpublished); *United States v. Flomenhoft*, 714 F.2d 708, 713-14 (7th Cir. 1983); *United States v. Simmons*, 663 F.2d 107, 108 (D.C. Cir. 1979) (per curiam).

Some circuits have provided an exception where there is a substantial showing of an abuse of prosecutorial discretion or where circumstances indicate that the witness would have been exculpatory. *Myerson*, 18 F.3d at 160; *St. Michael's Credit Union*, 880 F.2d at 598; *Flomenhoft*, 714 F.2d at 713.

"Requiring a missing witness instruction each time the prosecution decides not to immunize a witness would constitute a substantial judicial encroachment upon prosecutorial discretion." *Flomenhoft*, 714 F.2d at 714. In addition, a prosecutor's decision not to grant immunity "does not, categorically, give rise to an inference that the witness's testimony would be unfavorable to the government." *Myerson*, 18 F.3d at 159 (citation omitted).

We conclude that the government's failure to grant immunity to a witness who invokes the Fifth Amendment right not to testify does not by itself entitle a defendant to a missing witness instruction. Rios does not argue prosecutorial abuse of discretion, so we need not consider whether exceptions apply.

The record in fact suggests something quite far from an abuse by the prosecution. There was an understandable wariness by both sides about Mendoza. Both parties expressed skepticism over Mendoza's merit as a witness, likely as a result of his inconsistent behavior. For example, when pleading guilty, Mendoza expressly abandoned his earlier statements that he had not been involved in a conspiracy with Rios. Rios's counsel seemed to acknowledge this when he stated, "I don't anticipate needing [Mendoza]."

Not only was Mendoza not peculiarly available to the government, his testimony likely would have been cumulative or corroborative. Based on what

No. 10-40118

he said while pleading guilty the morning of Rios's one-day trial, he would have testified consistently with the government's view of the facts.

The district court did not abuse its discretion by denying Rios's request for a missing witness instruction.

AFFIRMED.