# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 9, 2011

No. 10-30744

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

MICHAEL MELANCON, also known as Kevin Melancon; DAVID
MELANCON,

Defendants – Appellants

---

Appeals from the United States District Court
for the Eastern District of Louisiana

---

Before JONES, Chief Judge, HAYNES, Circuit Judge, and CRONE, District
Judge.[*]

HAYNES, Circuit Judge:

Michael Melancon ("Michael") and his nephew, David Melancon ("David"),
appeal their convictions following a jury trial. David also appeals his sentence.
We AFFIRM.

## I. Facts and Background

We briefly review the facts pertinent to this appeal. David was the driver
of a car in which Jamar Higgins was a passenger when Arnold Wyatt began
shooting at the car. Viewing the evidence in the light most favorable to the jury

---

[*] District Judge of the Eastern District of Texas, sitting by designation.

verdict, David picked up a gun and began returning fire. Miraculously, neither was killed, but David was wounded. When the shooting stopped, Higgins pulled David into the back seat and drove him to the emergency room. Because Higgins knew he was a felon who could not possess a gun, he then threw the gun out the window, an event captured by the hospital's security cameras.

David was charged with possessing a firearm as a felon. Higgins gave a statement implicating David. Higgins later briefly served time in prison for an unrelated charge. Michael was in the same prison on other charges and acted as inmate counsel for various fellow prisoners. When he learned of Higgins's statement (apparently by receiving a copy of it), he went to Higgins, who then signed an affidavit providing a version of events that exculpated David. It was highly disputed whether Higgins wrote the affidavit of his own accord and then Michael merely typed it for Higgins's signature, or whether Michael prepared a false typed affidavit, got Higgins to sign it, and then had Higgins copy the typed affidavit in his own handwriting.

When the Higgins affidavit came to the attention of authorities, they decided to investigate whether this new version was accurate. ATF agent Suzanne Pecora and Assistant United States Attorney Maurice Landrieu went to the prison and interviewed Michael in a warden's office. They contend that they told Michael he was free to leave and was not required to answer their questions. Michael allegedly said in response that, as inmate counsel for several years, he knew his rights and would cooperate. During the course of the interview, he said that Higgins had prepared the handwritten affidavit and that Michael had only typed it. He claimed a hazy memory as to whether he had seen Higgins's factual statement implicating David. During the interview, he left to obtain documents as requested by the two questioners.

When a search revealed a marked-up factual statement in Michael's possession, the questioners began to doubt Michael's protestations of innocence

No. 10-30744

(and ignorance). In what Michael characterized as an "opening statement," Landrieu told Michael that he may have committed a crime. At that point, Michael terminated the interview and requested counsel.

Michael was charged with several counts stemming from the Higgins affidavit and the interview with Pecora and Landrieu. He moved to suppress the statements made at the interview. Following a two-day evidentiary hearing, the district court denied the motion to suppress.

David and Michael proceeded to a jury trial at which those statements were admitted. David was convicted of possessing a firearm as a felon, and Michael was convicted of making and using a false document that was presented to a federal agent and of obstruction of justice. The jury was either unable to reach a verdict or acquitted David and Michael on several other counts.

On appeal, Michael challenges the denial of his motion to suppress and the sufficiency of the evidence on the false document charge. David challenges the court's jury instruction on constructive possession and also brings a foreclosed issue as to his sentence.

## II. Standard of Review

In reviewing a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, reviewing factual findings for clear error and legal conclusions de novo. *United States v. Oliver*, 630 F.3d 397, 405 (5th Cir. 2011). We review a denial of a motion for acquittal challenging the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the jury's verdict. *United States v. Winkler*, 639 F.3d 692, 696 (5th Cir. 2011). We review alleged errors in the jury charge under an abuse of discretion standard. *United States v. Rios*, 636 F.3d 168, 171 (5th Cir. 2011).

## III. Discussion

A.   Michael

   1. Motion to Suppress

3

No. 10-30744

Michael contends that the district court erred in denying his motion to suppress because he was in custody at the time of the Pecora/Landrieu questioning and, therefore, was entitled to receive full *Miranda*[1] warnings. The Government contends that Michael was not "in custody" and, therefore, was not entitled to the warnings. It also argues that, even if Michael had been in custody, *Miranda* does not immunize statements that themselves are criminal.

A suspect is in custodial interrogation for purposes of *Miranda* "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988) (en banc). The question is an objective one – the subjective intent of the questioners and the subjective fear of the questioned person are irrelevant. *See Stansbury v. California*, 511 U.S. 318, 326 (1994). "[A] prison inmate is not automatically always 'in custody' within the meaning of *Miranda*," although the "prison setting may increase the likelihood that an inmate is in 'custody' for *Miranda* purposes." *United States v. Smith*, 7 F.3d 1164, 1167 (5th Cir. 1993) (citations omitted).[2]

Michael argues that the recent decision in *Maryland v. Shatzer*, 130 S. Ct. 1213 (2010), undercuts our precedent and compels a conclusion that interrogation of a prisoner in a separate room at the prison is "custodial." In *Shatzer*, however, no one contended that the defendant in that case was not "in custody" during the two interrogations. *Id.* at 1224. Thus, it does not present a basis to overrule our prior precedent. We have, instead, characterized it as

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] In a habeas case now before the Supreme Court, the Sixth Circuit recently held that a prisoner questioned in a separate room is always "in custody" for purposes of interrogation about activities occurring outside of the prison. *Fields v. Howes*, 617 F.3d 813, 823 (6th Cir. 2010), *cert. granted*, 131 S. Ct. 1047 (2011). Because Michael was questioned about conduct occurring within the prison, this "bright line rule" would not apply here. *Id.* at 822-23.

clarifying "the outer bounds of when *Miranda* is needed in a prison setting: the mere fact of the prison setting alone is insufficient to trigger the *Miranda* requirements, whereas a traditional police interrogation of an inmate does trigger the *Miranda* requirements." *Wilson v. Cain*, 641 F.3d 96, 101 (5th Cir. 2011).

Following a lengthy evidentiary hearing, the district court issued a detailed and careful opinion. *United States v. Melancon*, 2010 U.S. Dist. LEXIS 8669 (E.D. La. 2010). For substantially the same reasons given in that opinion, we conclude that, construing the evidence at the suppression hearing in the light most favorable to the Government, the district court's decision does not warrant reversal.

Even if we concluded otherwise and determined that Michael was "in custody" at the time of his discussion with Pecora and Landrieu, we agree with the Government that the statements would have been admissible at his trial because they were themselves a criminal act. *See United States v. Kirk*, 528 F.2d 1057, 1062 (5th Cir. 1976) ("[N]o fifth amendment problem is presented when a statement is admitted into evidence which is not confessional in nature, but in and of itself constitutes the crime charged."). Hence, Michael was not free to lie to the questioners and be absolved from the consequences of those lies because of the absence of warnings. The exclusionary rule does not act as a bar to the prosecution of a crime where the statements themselves are the crime. *See Smith*, 7 F.3d at 1167 n.6 (citing *United States v. Mitchell*, 812 F.2d 1250, 1253 (9th Cir. 1987)). Because the statements he made were themselves charged as criminal conduct, they were properly admitted as the key evidence on the counts of making false statements. *Cf. id.* at 1167 ("On remand, the alleged *Miranda* error does not preclude the government from introducing evidence of, or prosecuting Smith for, the threats made during the October 25 interview.").

No. 10-30744

Having concluded that the evidence was properly admitted at the time of trial, the later failure to obtain a conviction on those counts (Counts 6, 7, and 8)[3] does not change the calculus. In sum, we AFFIRM the denial of the motion to suppress.

### 2. Sufficiency of the Evidence

Michael claims that the evidence was insufficient to show that he knew the affidavit he helped Higgins prepare was false. Higgins originally told investigators that the gun was in the car on the center console and that he heard shooting from within the car (where only he and David were sitting) after Wyatt opened fire. The Government presented evidence at trial that supported Higgins's story. In the affidavit prepared by Michael, however, Higgins stated that Wyatt threw the gun into the car after the shooting incident. If the jury credited Higgins's testimony, it could reasonably conclude that Michael added the information about Wyatt throwing the gun in the car and that he did not get that information from Higgins. We conclude that the "knowledge of falsity" issue comes down to a credibility question which was for the jury to resolve. *See, e.g.*, *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992).

### B.     David

The charge to the jury included an instruction on constructive possession.[4] David argues that this instruction was erroneous because it was not applicable to the facts and confused the jury. He argued that the Government's case was

---

[3] The jury could not reach a verdict as to these counts.

[4] "Possession may be of two kinds: What we call actual possession and what we call constructive possession. . . . A person who, although not in actual possession, knowingly has both the power and the intention at any given time to exercise dominion or control over a thing . . . either directly or through someone else is then considered to be in constructive possession. . . . You may find that the element of possession, as that term is used in these instructions, is present if you find beyond a reasonable doubt that David Melancon had actual or constructive possession of the gun . . . ."

6

that David actually possessed the gun based upon Higgins's testimony that he heard David return fire when Wyatt started shooting. Forensic evidence also indicated that a gun was shot from the driver's side (where David was), and DNA evidence indicated that both Higgins and Wyatt had not fired the gun (although it failed to establish conclusively that David had fired it). David argues that the district court overlooked the fact that Higgins was also in the car before the gun was found and, therefore, that David's dominion over the car in which the gun was located was insufficient to establish constructive possession. David further argues that the allegedly erroneous inclusion of this instruction was not harmless because the jury sent a question to the court asking whether possession meant physically touching or having on one's person. He concludes that this question indicates some jurors were considering constructive possession as a basis for conviction.

Error in giving an instruction on one theory of guilt is harmless when there is substantial evidence to support a conviction under a different, properly given instruction. *Cf. United States v. Cartwright*, 6 F.3d 294, 301 (5th Cir. 1993) (holding that a district court's deliberate ignorance instruction was harmless error given substantial evidence of actual knowledge). "Actual possession means the defendant knowingly has direct physical control over a thing at a given time. Constructive possession is the ownership, dominion or control over an illegal item itself or dominion or control over the premises in which the item is found." *United States v. Jones*, 484 F.3d 783, 788 n.11 (5th Cir. 2007) (internal quotation marks and citations omitted). Where two people jointly occupy a space, dominion over the space is not enough by itself to establish constructive possession. *See United States v. Fields*, 72 F.3d 1200, 1212 (5th Cir. 1996).

No. 10-30744

We agree that this case was primarily an actual possession case. The Government, however, presented testimony that David was in a car rented on his behalf, that a gun was on the center console, and that the only other person present in the car did not possess the gun. We thus conclude that no reversible error was committed by including the constructive-possession instruction.

David also challenges sentencing enhancements based upon conduct for which he was acquitted. He acknowledges that his challenges are foreclosed, *see United States v. Watts*, 519 U.S. 148, 156-57 (1997), but seeks to preserve them for further review. We agree with David that we are not free to overrule Supreme Court precedent and, thus, affirm his sentence.

AFFIRMED.